## ELIZA DURNELL, Respondent, *v.* JOSEPH SOWDEN, Appellant.

Negotiable Instruments.—Presentment.—When the facts are ascertained, the question of the reasonableness of delay in presenting a promissory note for payment is a question of law for the court. Mere delay in presenting a note indorsed when overdue does not exonerate any party thereto by Laws of Utah, 1882, section 87.

Evidence.—Handwriting.—Testimony of experts who testify as to their opinion arising from a comparison of the handwriting in dispute with other writings, admitted to be genuine, already in evidence for other purposes, is admissible.

Appeal from a judgment of the district court of the third district and from an order overruling a motion for a new trial.

The complaint in this action alleged that on or about the 15th day of May A. D. 1885, defendant indorsed to plaintiff a certain promissory note in writing made by one A. Case, dated January 1st, A. D. 1884, that said note became due on January 1st, A. D. 1885, and was presented for payment on the 6th day of July, 1885, and payment refused.

Defendant upon the trial objected to the introduction of any evidence on the part of the plaintiff, because the complaint did not state facts sufficient to constitute a cause of action.

Because it appeared that the note in suit was indorsed after maturity by the defendant, to-wit: on the 15th of May, 1885, and was not presented for payment to the maker until the 6th day of July, 1885, and that no excuse for the delay and negligence was stated, whereupon the court overruled said objection, to which defendant's counsel then and there excepted.

Plaintiff was then sworn in her own behalf, and testified that she saw the defendant indorse his name on the back of the note, about the last of April or the first of May, 1885, at his house in this city, in the presence of Bishop

Wooley, Theodore McKean and herself, and delivered to her. Plaintiff proved demand and notice as in the complaint stated, and that the defendant had not paid the note or any part thereof. Evidence was also introduced by plaintiff that the signature of defendant upon the back of the note was written in violet ink. Whereupon the defendant was called on behalf of the plaintiff and identified certain paper writings exhibited to him as being in his handwriting, and having been written by him, which were marked respectively exhibits "A," "B," "C," "D," and testified that exhibits "A" and "C" were letters written by him to Edward Case, the father of the maker of the note, (the said exhibits "B" and "D" appeared to have been written in violet ink), whereupon the plaintiff offered said exhibits in evidence, to which offer the defendant objected for that the same were irrelevant, immaterial and incompetent, and did not tend to support any of the issues by the pleadings, whereupon the court overruled said objection and admitted in evidence said exhibits, and each of them, to each of which rulings the defendant then and there excepted.

Of said exhibits, exhibit "A" was alone at any time read to the jury, thereupon Joseph H. Hurd, a clerk in the office of plaintiff's attorneys, J. L. Rawlins, one of the plaintiff's attorneys, and Arthur Brown, an attorney of this court, were respectively sworn and examined on the part of the plaintiff and were permitted to examine the several exhibits aforesaid in detail, and the said Hurd and the said Rawlins testified that they each had compared then idorsement on the note with the names and letters contained in said exhibits prior to the trial of the action with a view of ascertaining the genuineness of the alleged indorsement, and the said Brown testified that he saw and examined the signature on the back of the note in court on the evening of the first day of the trial and he, the said Brown, was then and there permitted to examine the said exhibits in evidence for the purposes of comparison, and each of said witnesses then and there testified that in their opinions the indorsement on said note was, and they each of them believed it to be genuine. Witnesses Hurd and Rawlins giving testimony founded upon a comparison actually made

by them by the signature on the note with the handwriting
in the exhibits prior to the trial, and the witness Brown
testified upon a comparison made by examining the
indorsement on the note on the 11th of March, 1887, and the
handwritings in the exhibits without having the note, on
the 14th day of March. The note in suit, with the alleged
indorsement thereon, was produced by the plaintiff on the
first day of the trial, but was not introduced or read in evi-
dence, and the same was on said day lost or mislaid, and
thereafter could not be and was not found. To the testi-
mony of each of said witnesses, and the whole thereof and
to the submission of said exhibits to the said witnesses and
each of them for the purposes of comparison, the defendant
duly objected, for that the same were irrelevant, immaterial
and incompetent, and that said exhibits were collateral to
the suit and immaterial, but the court overruled the objec-
tion and defendant excepted.

The defendant in writing requested the court to charge
as follows, to-wit:

"If you believe from the evidence that the defendant
indorsed the note in suit to the plaintiff on the 15th day of
May, 1885, and that the time elapsing between that date
and the 6th day July, 1885, when the note was presented
to the maker for payment, was an unreasonable time, and
that under all the circumstances the plaintiff was negligent
in not presenting the note sooner, you will find for the de-
fendant." But to give said charge or any part thereof the
court refused and did not substantially or otherwise charge
as requested to, which refusal the defendant then and there
excepted. The remaining facts are found in the opinion.

*Mr. Charles S. Varian* and *Mr. Frank Pierce*, for the
appellant, argued that the court erred in refusing to ex-
clude all evidence under the complaint.

A promissory note indorsed after maturity, must be pre-
sented within a reasonable time, to charge the indorser:
Daniel Negotiable Instruments, Vol. 1, Sec. 611; Parsons
on Contracts, Vol. 1, p. 256; *Field* v. *Nickerson*, 13 Mass.,
136; *Thayer* v. *Bractett*, 12 Mass., 450; *Berry* v. *Robinson*,
9 Johns., 121; *Patterson* v. *Todd*, 18 Pa. St., 426.

When the facts are ascertained, the question is one of law for the court, otherwise for the jury: Daniel Neg. Instruments, Vol. 1, Sec. 612; *School District* v. *Com.*, 84 Pa. St., 471; *Poorman* v. *Mills*, 39 Cal., 345; *Himmelman* v. *Hotaling*, 40 Cal., 111; *Wallace* v. *Agay*, 4 Mason, 336; Parsons Notes and Bills, Vol. 1, 340; *Wyman et al.*, v. *Adams*, 12 Cush., 210.

The holder must plead and prove the circumstances excusing delay: *Jerome* v. *Stebbins*, 14 Cal., 457; *Keyes* v. *Fenstermaker*, 24 Cal., 329; Statutes Utah, 1882, p. 57, section 55.

This note having been indorsed after maturity, payment should have been demanded within a reasonable time: Daniel Negotiable Instruments, secs. 611 and cases cited, sec. 995; 1 Parsons' N. & B., 519, note.

The indorsement is in fact a draft upon the maker through the indorsee for *immediate* payment.

What *is* a reasonable time, seems to be a perplexed question: See *McKewer* v. *Kirtland*, 33 Iowa, 352; *Colt* v. *Barnard*, 18 Pick., 260; *Keyes* v. *Fenstermaker, supra; Wyman et al* v. *Adams, supra;* Daniels, Vol. 1, sec. 470, *et seq.*

The appellant was entitled to have the court, at least, submit the question of delay to the jury. The note was indorsed long after maturity, but was not presented for nearly two months after indorsement, although all the parties lived in the same city. If this note had been indorsed one day before maturity, there would be no question that the indorser was discharged. But it is suggested that the statute in relation to negotiable instruments (Laws 1882, p. 50) determines the question against appellant.

We do not see that this statute relaxes the rule. It has apparently undertaken to relieve against the consequences of mere delay in presenting interest-bearing demand or sight notes. But we find nothing in its provisions limiting or modifying the rules relative to presentment for payment of other negotiable notes.

The court erred in admitting the testimony as to handwriting.

The rule of the common law permitted no comparison of

disputed writing with another written specimen of the same individual, produced in court, either by the court, jury, or witnesses.

To this rule there is an exception; that when the collateral writing is admitted or proven to be in the handwriting of the party, and is in evidence for other purposes in the cause, it may be compared with the disputed writing by the jury, but not by witnesses: Greenleaf on Evid., Vol. 1, sec. 580 and 581; Taylor on Evid., Vol. 2, secs. 1863 and 1869; Wharton on Evid., Vol. 1, secs. 712 and 713, *et seq.*, and notes; Phillip's Evidence, Vol. 2, top page 512, *et seq.*, and note and page 517; *Doe* v. *Newton*, 5 A. & E., 574; *Young* v. *Homer*, 2 M. & Rob., 537; *Griffiths* v. *Ivory*, 11 A. & E., 322; *Hughes* v. *Rodgers*, 8 M. & W., 125; *Mudd* v. *Tuckermore*, 5 A. & E., 703; *Stranger* v. *Searl*, 1 Esp. 14; *Perry* v. *Newton*, 5 A. & E., 517.

In the United States the authorities are conflicting, but the great weight of judicial opinion is against the admission of this evidence.

And the federal courts are in line with the authorities of England and America: *Strother* v. *Lucas*, 6 Peters, 763; *Rogers* v. *Ritter*, 12 Wall., 317; *Moore* v. *U. S.*, 91 U. S., 270; *Needway* v. *U. S.*, 6 Ct. Claims, 421, and cases cited at page 407, Lawson Expert Evidence.

The common law, in the absence of statute, is the rule of decision in this territory, whether it is founded in reason or not, and the courts have no power to alter it.

*Messrs. Sheeks & Rawlins*, for respondent.

The first point made in appellant's brief is not well taken. It is universally agreed by the authorities that the holder of a note, who indorses it when overdue, is to be deemed an indorser of a note payable on demand, and the same principles of law in respect to demand and notice are applicable: Benjamin Chalmers' Digest of Bills, Notes and Checks. 159; 2 Parson's Notes and Bills, 13.

This being so, demand of payment was made within proper time under the law as it is settled in this territory by the statute: Laws 1882, p. 65, secs. 109, 87; also secs.

34. 37, and 38; see also *Merritt* v. *Todd*, 23 N. Y., 28; *Pardee* v. *Fish*, 60 N. Y., 270 and 271; Benjamin Chalmer's Digest, 276.

The exhibits being relevant were properly admitted in evidence. These writings already in the case might be used by the jury for comparison with or without the aid of experts: 1 Greenleaf Ev., sec. 578, 581, 579; 1 Wharton Ev., secs. 714, 717; *Rogers* v. *Ritter*, 12 Wall., 317; Stephens' Digest Ev., pp. 109, 110.

BOREMAN, J.:

The respondent, Eliza Durnell, brought her action against the appellant, Joseph Sowden, upon a certain promissory note alleged to have been indorsed to her by him after maturity. Verdict and judgment were rendered against Sowden, and thereupon he appealed the case to this court.

1. It is alleged that the court erred in refusing to exclude all evidence under the complaint; that the complaint did not state facts sufficient to constitute a cause of action, for that there was delay and negligence in presenting the note for payment, and no excuse therefor was stated. In regard to the alleged delay, the appellant asked the court, at the close of the testimony, to charge the jury that if they believed the delay in presenting the note for payment to have been unreasonable, and that, under all the circumstances, the respondent was negligent, etc., they should find against her; but the court refused to so charge. We do not see that it was necessary for the complaint to state any excuse for the delay. It stated the facts as to the time of presentation and the date of the indorsement. From these facts the court was to judge whether there had been unreasonable delay or not. It would not have been proper for the court to have instructed the jury upon the question of the reasonableness or unreasonableness of the delay. That was a question for the court and not for the jury; and the court, in passing upon the sufficiency of the complaint, passed upon the question. When the facts are ascertained, the question is one of law for the court. The appellant cites authorities

which support this view: Daniel. Neg. Inst., sec. 612; *School-Dis.* v. *Com.*, 84 Pa. St., 471; *Poorman* v. *Mills*, 39 Cal., 345; *Himmelman* v. *Hotaling*, 40 Cal., 111; *Wallace* v. *Agry*, 4 Mason, 336; Pars. Notes & B., 340; *Wyman* v. *Adams*, 12 Cush., 210.

In the complaint the facts are all stated—all ascertained. The delay in presenting the note to the maker for payment was not unreasonable. *Van Alstyne* v. *Van Hoesen*, 3 Wend., 75. A note indorsed, when overdue, is considered equivalent to a note or bill on demand: 1 Pars. Notes & B., 519, 381. Our statute declares that mere delay in presenting a bill of exchange or promissory note, payable, with interest, at sight or on demand, does not exonerate any party thereto: Laws 1882, p. 62, sec. 87; Id., p. 65, sec. 109.

2. It is assigned for error that the court admitted in evidence certain letters of the appellant, and permitted witnesses to testify from a comparison of the same with the signature of the appellant in dispute. The respondent, as witness in her own behalf, testified that she saw the appellant indorse his name on the note in question. Thereupon, as additional testimony in regard to the genuineness of the signature of the appellant, the appellant himself was called to the witness stand, and testified that these letters were in his own handwriting. They were then introduced in evidence, over the objection of the appellant.

The former English rule was that evidence of the genuineness of a signature could not be proven by witnesses testifying as to their opinion arising from comparison of the handwriting with other handwritings shown or admitted to be genuine. This was not settled in England, however, as the common law doctrine, until 1827, and by a divided court, in the case of *Mudd* v. *Suckermore*, 2 Nev. & P., 18. Thereafter parliament adopted the views of the minority of the court, and enacted a statute allowing such evidence to be admitted.

In this country the courts of the different states have taken different views of the question, some admitting and others rejecting such evidence, before it was settled in

England.   The supreme court of the United States leaned towards the view as afterwards settled in England in *Mudd* v. *Suckermore*, but made no direct decision upon the question.

The first case in that court to which our attention has been called is that of *Strother* v. *Lucas*, 6 Pet., 767,' 768, but it was a case where the handwriting (a signature to a deed) was sought to be proven by comparison with the handwriting or entries made in a certain register of marriages and interments alleged to have been made by the witness, of which, however, there was no direct evidence, and "there were living witnesses examined as to the handwriting; and, besides, the deed was received and read in evidence, and the plaintiff had the full benefit of it." The general rule, as recognized, was mere *dictum*, and not a decision upon the point, and the case was not at all like the present one.

In the next case, that of *Rogers* v. *Ritler*, 12 Wall., 320, the court said that it was "not necessary, for the purposes of this case, to discuss the subject in all its bearings, nor to depart from the rule laid down by the court in *Strother* v. *Lucas*, that the evidence by comparison of hands is not admissible when the witness has had no previous knowledge of the handwriting, but is called upon to testify merely from a comparison of hands." The court then proceeded to approve the admission of the evidence where the witness had never seen the party write, nor had they had any correspondence with him, but their knowledge had been obtained entirely from having seen his name signed to papers, and no question had been raised as to the genuineness of his signature to them. The facts in the present case are very similar to those in that case. Here two of the witnesses obtained their knowledge of the appellant's handwriting by having seen the letters referred to before being called as witnesses, but not before the commencement of the action. That is the only difference, except that in one respect the case at bar is the stronger. In the case at bar the party (appellant), whose signature to the note is in dispute, testifies that the exhibits examined by the witnesses were written by him.

The supreme court of the United States, in the case of *Rogers* v. *Ritter*, said: "The witesses in this case were conversant with the signature of Sanchez, and swore to their belief, not by comparing a disputed with an acknowledged signature, but from the knowledge they had previously acquired on the subject. The text writers all agree that a witness is qualified to testify to the genuineness of a controverted signature if he has the proper knowledge of the party's handwriting. The difficulty has been in determining what is proper knowledge, and how it shall be acquired. It is settled everywhere that, if a person has seen another write his name but once, he can testify, and that he is equally competant if he has personally communicated with him by letter, although he has never seen him write at all. But is the witness incompetent unless he has obtained his knowledge in one or the other of these modes? Clearly not, for in the varied affairs of life there are *many modes in which one person can become acquainted with the handwriting of another* besides having seen him write or correspond with him. There is no good reason *for excluding any of these modes of* getting information; and if the court, on the preliminary examination of the witness, can see that he has that degree of knowledge of the party's handwriting which will enable him to judge of its genuineness, he should be permitted to give to the jury his opinion of the subject."

This would appear to have been the situation in the case at bar. The court evidently saw that all three of the witnesses who testified to the signature of the appellant, from examination of the letters shown in evidence, had that degree of knowledge that would enable them to judge of the genuineness of the appellant's signature. Opinion evidence is generally weak; yet that fact does not make it incompetent. And this case of *Rogers* v. *Ritter* also lays down the doctrine that it was proper for the witnesses to give their opinion to the jury. This is in accord with the general doctrine that it is proper for such evidence to go to the jury, rather than that the jury should compare the writings themselves.

The only other case decided by the supreme court of the

United States, and to which our attention has been called, is that of *Moore* v. *U. S.*, 91 U. S., 270. It was a case wherein the court of claims, sitting as a jury, had compared the disputed signature with a genuine signature to a paper already in evidence for another purpose. The court, referring to the general rule spoken of as the common-law rule, said that that case was an exception to the general rule, and said the comparison was proper. It decided nothing further on the subject.

It would seem from all these cases that the interpretation placed upon the rule by the supreme court of the United States confines it to cases where the witness has no knowledge on the subject until called to the witness stand, and then the disputed signature and also the genuine signatures are for the first time presented to him for his examination and opinion. That narrows the rule down to very limited boundaries, and in our view does not include the case at bar; but it is an exception thereto, similar to the case of *Rogers* v. *Ritter*, *supra*, even if the rule be recognized to exist at all. In very many of the states that rule has never been recognized. At the time of the first settlement of the older states, or at the time of our national independence, the rule had not been settled in England, and the rule as subsequently settled in England was not, therefore, accepted as part of the common law by those states. The reasons upon which the rule of exclusion was recognized in England do not exist in the case at bar, and the rule is not approved as a wise one by the text writers generally. All of these things together lead us to the conclusion that the lower court did not err in admitting the evidence of the experts as to the genuineness of the appellant's signature upon the note.

We see no error in the court below. The judgment and order of that court are affirmed.

ZANE, C. J., and HENDERSON, J., concurred.