## JAMES TUCKER, APPELLANT, *v.* M. M. KELLOGG AND OTHERS, RESPONDENTS.

EVIDENCE.—HANDWRITING.—COMPETENCY BY KNOWLEDGE.—A witness, who as administrator of an intestate, has seen numerous checks and notes found among papers of the deceased and stated that he was acquainted with deceased's signature, is a competent witness to testify to deceased's signature from actual knowledge of his handwriting.

ID.—ID.—COMPARISON.—An expert witness may testify as to his opinion formed from a comparison of signatures admitted to be genuine, with the signature in question, irrespective of the fact as to whether such genuine signatures are already in evidence for other purposes.

*Mr. David Evans,* for the appellant.

*Mr. George Sutherland,* for the respondents.

APPEAL from a judgment of the district court of the first district and from an order refusing a new trial. The opinion states the facts.

ZANE, C. J.:

This action was instituted upon a promissory note purporting to have been executed by the late J. M. Drake for the payment of $2,100 to J. M. Martin, and assigned by the latter to the plaintiff. The defendants denied its execution, and that issue was tried by a jury, who found the issue for the defendants, and a motion for a new trial by the plaintiff was denied, and a judgment was rendered by the court on the verdict. To this action of the court the plaintiff excepted and appealed.

The evidence upon the issue of fact as to the signature

on the note was conflicting. The witness, Kellogg, stated that he had never seen Drake write, but that a large number of checks and notes were in his possession,— probably five hundred,— that he supposed were paid by him. The signature to them purported to be his. They were found among his papers after his death, and came to witness' hands as administrator of his estate. That he had examined them, and from all this information he stated that he could say he was acquainted with Drake's signature. That he had seen the note sued on, and inspected the signature to it. Witness was then asked by plaintiff whether, in his opinion, the signature was in Drake's handwriting. To this question the defendants objected that the evidence did not show that he had sufficient information to qualify him to express the opinion asked for. The objection was sustained, and the plaintiff excepted, and assigns the ruling of the court sustaining the objection as error. The fact that the notes and checks were in Drake's possession at the time of his death raised the presumption that he had paid them, and, if so, he thereby recognized his signature to them as genuine. It was the duty of the witness to examine papers coming to his hands as administrator, and it appears that he did. The witness doubtless became more familiar with the signature of Drake in this way than he would have become from seeing him write once. We have no doubt that the witness, from the examination of the signature of intestate to the various papers so coming into his hands, gained sufficient knowledge to qualify him to express the opinion asked for. The court said in the case of *Rogers* v. *Ritter*, 12 Wall. 317, that "the text-writers all agree that a witness is qualified to testify to the genuineness of a controverted signature if he has the proper knowledge of the party's handwriting. The difficulty has been in determining what is proper knowledge, and how it shall be acquired. It is settled everywhere that, if a person has seen another write his name

but once, he can testify, and that he is equally competent if he has personally communicated with him by letter, although he has never seen him write at all. But is the witness incompetent unless he has obtained his knowledge in one or the other of these modes? Clearly not, for in the varied affairs of life there are many modes in which one person can become acquainted with the handwriting of another, besides having seen him write or corresponded with him. There is no good reason for excluding any of these modes of getting information; and if the court, on the preliminary examination of the witness, can see that he has that degree of knowledge of the party's handwriting which will enable him to judge of its genuineness, he should be permitted to give to the jury his opinion on the subject." To the same effect is *Bank* v. *Root,* 2 Metc. (Mass.) 523; *Tuttle* v. *Rainey,* 98 N. C. 513; 4 S. E. Rep. 475; *Durnell* v. *Sowden,* 5 Utah, 216; 14 Pac. Rep. 334.

It also appears from the record that counsel for plaintiff offered to show the witness Dusenbury, who was cashier of the First National Bank of Provo City, and competent to testify to handwriting as an expert, a number of signatures to checks admitted by the parties to have been written by the deceased, and to ask him to compare them with the one in dispute, and from that comparison to say whether, in his opinion, they were written by the same person. The court sustained an objection by the defendants to the offer, and the plaintiff assigns that ruling of the court as error. The common law excludes a comparison of handwriting as proof of signature. But to the general rule there is this exception: that, if a paper admitted to be in the handwriting of the party, or to have been subscribed by him, is in evidence for some other purpose in the case, the signature or paper in question may be compared by the jury, with or without the aid of experts. The principal reasons given for the exclusion of evidence by comparison of handwriting are (1) the danger of fraud in the selection

of specimens for comparison, and, (2) if admitted, their genuineness may be contested, and collateral issues introduced into the trial. These reasons do not apply against the introduction of writings conceded by the parties to be genuine as specimens, because, if either party entertains a suspicion that the writing offered is spurious, he will not concede it to be genuine; and, if all the parties concede the specimen to be genuine, no collateral issue can arise upon it. Therefore, we think there should also be an exception to the general rule excluding evidence by comparison admitting writings as specimens for comparison conceded by the parties to be genuine. The court said in the case of *Moore* v. *U. S.*, 91 U. S. 270: "The general rule of the common law, disallowing a comparison of handwriting as proof of signature, has exceptions equally as well settled as the rule itself. One of these exceptions is that, if a paper admitted to be in the handwriting of the party, or to have been subscribed by him, is in evidence for some other purpose in the cause, the signature or paper in question may be compared with it by the jury." In this the court mentions one exception to the rule. Such papers as that exception includes are not within the general rule, and so we say as to those papers conceded by the parties to be genuine. The competency of testimony and the admissibility of evidence is governed by rules supported by reason, and the rule should not be applied to testimony or evidence to which the reason of the rule is inapplicable. The rule as stated by Greenleaf is: "But, with respect to the admission of papers irrelevant to the record, for the sole purpose of creating a standard of comparison of handwriting, the American decisions are far from being uniform. If it were possible to extract from the conflicting judgments a rule which would find support from a majority of them, perhaps it would be found not to extend beyond this: that such papers can be offered in evidence to the jury only when no collateral issue can be raised concerning

them, which is only where the papers are either conceded to be genuine, or are such as the other party is estopped to deny, or are papers belonging to the witness, who was himself previously acquainted with the party's handwriting, and who exhibits them in confirmation and explanation of his own testimony." 1 Greenl. Ev. § 581. The author excepts from the general rule excluding evidence by comparison of handwriting, among others, evidence of comparison of writings, admitted by the parties to be genuine, with the one in dispute. To the same effect are *State* v. *Clinton*, 67 Mo. 380; *Durnell* v. *Sowden*, 5 Utah, 216; 14 Pac. Rep. 334; 1 Whart. Ev. (2d Ed.) § 717. We find no other errors in this record. For the reasons above indicated we are of the opinion that a new trial of this cause should be granted. The judgment appealed from is reversed, and the cause remanded.

ANDERSON, J., and MINER, J., concurred.