## STATE *v.* JOSEPH W. HALFORD.

1. *Rape—Res Gestæ—Credibility.*

Res gestæ in rape cases includes the fact that a complaint was. made by the injured party soon after the act. The fact that the prosecutrix complained of the outrage immediately after its commission, or delayed making such a complaint a considerable time, bears upon the credibility of her testimony.

2. *Rape—Outcry—Credibility of Prosecutrix.*

If the prosecutrix be of good fame, if she presently discovered the offense; if she made outcry, and showed signs of injury,— these, and the like, are considered circumstances which give greater probability to the truth of her testimony. But if she concealed the injury for a considerable time after opportunity to complain; if she be of evil fame, and stand uncorroborated by others; if she give false or contradictory statements as to the occurrence; if she made no outcry; if she remained on friendly terms with her assailant after the assault, and did not show signs of injury,—these and the like circumstances carry a strong presumption that her testimony is false or feigned.

3. *Sufficiency of Evidence.*

Where there is testimony tending to connect the defendant with the commission of a crime, and show his guilt, the weight to be given it is a question for the jury, and the supreme court will not substitute its judgment for that of the jury, even if so inclined. *State* v. *McCune*, 16 Utah 170.

4. *Motion for New Trial—Surprise—False Testimony.*

When, upon a motion for new trial, it clearly appears by affidavit that the defendant was surprised at the testimony of the prosecutrix, and that much of her testimony taken was untrue, a new trial will be granted.

(No. 919.   Decided September 21, 1898.)

Appeal from district court, first district; C. H. Hart, *Judge.*

Joseph W. Halford was convicted of rape, and appeals. *Reversed.*

*B. H. Jones* and *Moyle, Zane & Costigan,* for appellant:

The law is well settled that before a conviction can be had for rape it must appear that the woman raped resisted with all her strength.  It must be a bona fide resistance, not a pretence of reluctance.   There must be some evidence of struggle if the woman has her senses, and if not overpowered or completely terrified.   The fact that a woman, who has had such a frightful outrage perpetrated against her chastity, makes no complaint, is always cogent proof that no rape was committed.   The law is stated to be that if the woman was in her senses, unless she was overpowered by fear, or terrorized by display of force, she must have resisted to the extent of her ability. 32 Cent. Law Jour. 103, by Chief Justice Maxwell of Nebraska; see also *Miller* v. *United States,* 164 U. S. 644; *State* v. *McCune,* 16 Utah 170.

The proof made in this case does not meet the law.   It would be a travesty on criminal justice to permit such a conviction to stand.   If it can stand, the law of rape will receive a new and hitherto unheard of development.   At most, on the woman's own statement, an act of sexual

intercourse took place. She had been importuned, she denied the favor; the man persisted, she coyly pushed him away with one hand, then she accommodated herself to an erect position and without a struggle submitted, and never thought of rape until her husband taxed her with an act of infidelity.

As bearing upon the question, we submit the following cases: *Curby* v. *Territory,* 42 Pac. Rep. 953; *Rhea* v. *State,* 175 W. Rep. 931; *Whittaker* v. *State,* 50 Wis. 518; *People* v. *Dohring,* 59 N. Y. 374; *Tittle* v. *State,* 38 S. W. Rep. 202.

On the motion for a new trial, the evidence that was produced at the hearing was made all the stronger by the affidavits, which showed that the defendant was not present in West Portage, in corroboration of his own testimony, and showed further how close the corral was to the house, and the nature of the fence against which she claimed to have been held. So, taking the unsatisfactory nature of the evidence with the additional evidence shown on the motion for a new trial, it seems plain that the new trial ought to have been granted by the lower court.

In conclusion, we submit that the evidence, being all in, so far as the prosecution was concerned, and the prosecutrix's own testimony not showing rape, the defendant ought now to be discharged without the expense of a new trial. This was done in the case of *Curby* v. *Territory,* 42 Pac. Rep. 953.

*A. C. Bishop, Attorney General,* for the State.

In a criminal case, proof to a moral certainty is not required, and all that is necessary is that all reasonable doubt of guilt be removed. *Territory* v. *Barth,* 15 P. 673; *Territory* v. *Clanton,* 20 P. 94.

The evidence in this case, at best, is conflicting, and may be said to be not very strong, as tending to support the verdict, and yet, I contend that there is a substantial conflict, and that in such a case, the rule laid down by this court in several cases, is to the effect, that where there is a conflict in the evidence, and it does not appear that the jury labored under a mistake in considering their verdict, or that they were actuated by any improper motive, a new trial should not be granted. This doctrine was announced in the case of *People* v. *Chalmers*, 5 Utah 201; and adhered to in *People* v. *Peacock*, 5 Utah 237 *U. S.*; v. *Harris*, 5 Utah 436.

Nor will the verdict of "guilty" be set aside if the evidence substantially supports it.

There must be an absence of evidence against the defendant, or substantial preponderance in his favor. *People* v. *Clawson*, 2 Utah 502; *People* v. *Swasey*, 6 Utah 93; *U. S.* v. *Brown*, 6 Utah 115; *People* v. *Biddlecome*, 3 Utah 208.

MINER, J.:

The defendant was convicted of the crime of rape. The errors upon which the defendant relies for a reversal of the judgment are that the evidence was wholly insufficient to support the verdict of conviction, and that the court erred in not instructing the jury to acquit the defendant.

It appears from the testimony that the defendant was married to a sister of the prosecutrix. The parties were well acquainted with each other, and the prosecutrix lived in defendant's family prior to her marriage. The prosecuting witness, among other things, testified, in substance: That defendant came to her house on May 27,

1897, about sundown. That he ate supper with her hus-band, and then went to the corral. That he soon called, and asked where the clevis pin was. She says: I went out where he was. My attention was called to the fact that the clevis pin was lost. I stooped down to pick up the pin, and he stooped down, and put his arm around my shoulder, and says, 'Let's have some.' I said, 'No, sir; I am not a'woman of that kind.' Then he had me with my back against the fence, and he held me there with his knees between mine, and he raised my clothes with his other hand, and got what he wanted. My clothes were soiled. After this I went to the house. Before I went to the house defendant said if I told on him he would swear against my word, and make me not a true woman, and that my husband would leave me. Defendant followed me to the house and sat on the steps after I had entered it. My husband was in the house when I returned. My husband told the defendant that he had better come in and go to bed; that the bed was made down. The de-fendant said, 'No; he guessed he'd better go home.' I told him that he had better go home, or somewhere else, 'the dirty dog.'" It appears the defendant accepted the husband's invitation, and stayed at his house that night, and went away in the morning. It appears also that prosecutrix's husband had been sick during the summer, and that she had taken care of him night and day for two months previous, and was worn out and weak, and that she had been sick all the summer before the act. She also states that he forced the side of her body against the poles of the fence, and that his right arm was around her; that the fence left a greenish color on the back of her dress, and her dress sleeve was torn, as ap-peared in court; that she stated the fact of her ravishment to her friends afterwards, in presence of defendant, and

at his request, and he did not deny it, but admitted it; that defendant said he would do anything in his power to have it settled, but did not want to go to the bishop. He refused to go before the bishop, and said he would be a fool to go before him. She says: "While the defendant was committing this offense I done all in my power that I could do. He held one arm, and I had only one arm from my elbow down. I couldn't move. I was held fast there. I used my one arm all I could to push him away. I commenced to cry, and did all I could to get away, and bit him. I could not do much when I was held up." That both parties were standing up, the defendant being in front of her holding her fast. That defendant came to her house often as a friend, and chopped wood and helped them, as her husband was sick. She also states "that at the time of the act my husband was in the house, 150 yards away, and a family lived across the street. I did not call for assistance, because my husband was sick, and the least little thing excited him, and I thought it might put him back in bed again, and I was so pleased to see him getting better." That she did all she could with the one hand that was loose, and that she was trying all the time to get away from him. That she told Bishop Harris nothing had happened, except that defendant had proposed and she had refused. That the reason she so stated to the bishop was that defendant's wife begged her not to tell, because it would destroy the two families —"my own sister's husband and my brother-in-law." That she asked the prosecuting attorney to withdraw the suit. That defendant said if she told on him, he would swear it on her, and make her out a liar, and that her husband would leave her. That she told her husband about the ravishment about 10 days after it occurred. That her husband wanted it made public and acknowledged. That

she went to the defendant's house once with her husband before the complaint was made. The prosecutrix weighed 120 pounds, and was five feet and a half high. Defendant weighed 160 pounds, and was six feet high. The husband of the prosecutrix testified, in substance, among other things, that on the evening in question he had been sick for some time, and that his wife had sat up and waited on him; that when she came in from finding the clevis pin she looked as if she felt bad; that defendant sat on the steps, and he asked him to stay over night: that defendant replied that he thought he would go home; that witness' wife called defendant a "dirty dog," or something like that; that the defendant stayed all night, and went away early in the morning before breakfast; that he was suspicious of something when his wife called defendant a "dirty dog"; that the defendant had been very friendly, and had assisted him during his sickness that after this he had suspicious that something was wrong between his wife and the defendant; that he asked his wife what was wrong between them, and his wife stated the transaction as sworn to, and seemed to feel very badly about it; that, after his wife told him of the rape, "the defendant came to him, and asked him, if this thing got out, if I would swear it was something I had sprung on him,—something I had made up to tell against him.' Other testimony was given, and the defendant introduced evidence tending to contradict the prosecutrix.

The res gestæ in rape cases, according to most of the authorities, would include the fact that a complaint was made by the injured party. In all such cases it is desirable to know how soon, and in what way, the assaulted party complained. The fact of an early complaint is

17 UTAH—31

material, as bearing upon the credibility of her testimony, and delay in making complaint, unless excused or accounted for, as by showing she was under the fear or control of her assailant, will bear upon her credibility. If the prosecutrix be of good fame; if she presently discovered the offense, and made search for the offender; if she made outcry, and showed circumstances and signs of injury; if the offender fled for it,—these and the like are considered circumstances which give greater probability to the truth of her testimony. But, on the other hand, if she concealed the injury for any considerable length of time after she had opportunity to complain; if she be of evil fame, and stand uncorroborated by others; if she give false and contradictory statements as to the occurrence; if the place where the act was alleged to have been committed was where it was possible she might have been heard, and she made no outcry; if she did not show signs of injury, but remained on friendly terms with the assailant after the assault,—these and the like circumstances carry a strong presumption that her testimony is false or feigned. 1 Hale, P. C. 633; 3 Greenl. Ev. § 121; *Strang* v. *People,* 24 Mich. 1; *People* v. *Brown,* 53 Mich. 531; *State* v. *McCune,* 16 Utah 170; *Maillet* v. *People,* 42 Mich. 262.

In this case the prosecution introduced the above and other evidence tending to connect the defendant with the commission of the crime, and the defendant introduced evidence tending to exculpate him from the charge. The jury were the judges of the facts, the credibility of the witnesses, and the weight of the evidence. They were evidently satisfied with the truth of the testimony of the prosecutrix, and with the reasons given by her for not making a complaint at an earlier date, and in not making an outcry on the occasion in question. If the jury be-

lieved the testimony of the prosecutrix on the subject of the act charged, it was sufficient upon which to convict the defendant. All the elements of the crime charged were covered by her testimony, although it must be conceded that a portion of it was weak and unsatisfactory. In the case of *State* v. *McCune*, 16 Utah 170, this court said: "All the surrounding circumstances were shown to the jury, and they found the issues against the defendant. If the jury believed the testimony offered on the part of the prosecutrix, it was clearly sufficient to justify the verdict found. In such cases, and under such circumstances, it is not within the legal power of this court under the constitution of this state, to substitute its judgment for that of the jury, even if so inclined. This question has been passed upon by this court so frequently that it is unnecessary to give further reasons or cite authority in support of the position taken." The same principle is applicable to the case at bar. The case seems to have been submitted to the jury upon proper instructions.

A motion for a new trial was made, based upon newly discovered evidence. It appears from affidavits used that defendant was surprised at the testimony of the prosecutrix, and that much of the material testimony given by her upon the trial was untrue. We are not satisfied that if this testimony had been introduced a different conclusion might not have been reached by the jury. We are therefore inclined to hold that the court erred in refusing to grant a new trial upon the basis of the evidence and affidavits submitted upon the motion. The judgment of the court below is reversed, and a new trial granted.

ZANE, C. J., and BARTCH, J., concur.