# THE STATE OF UTAH, RESPONDENT *v.* EDWARD M. WEBB, APPELLANT.

18    441
21    400

18    441
23    520

18    441
24    470

CRIMINAL LAW—EVIDENCE—QUESTION FOR JURY—RULE CONCERNING REBUTTAL TESTIMONY — WHEN RELAXED — EXPERT TESTIMONY—QUALIFICATION OF WITNESS—EXPERT TESTIMONY—RULE IN CRIMINAL CASES — HANDWRITING — BASIS FOR COMPARISON — TESTIMONY WITHIN REASON OF RULE.

*Criminal Law—Evidence—Question for Jury.*

Where, in a criminal case, the evidence tends to connect the defendant with the commission of the crime, the weight to be given it is a question for the jury.

*Rule Concerning Rebuttal Testimony—When Relaxed.*

A trial court may, in its discretion, relax the rule concerning rebuttal testimony and permit the introduction of testimony not properly rebuttal. if the defendant is not prejudiced thereby.

*Expert Testimony—Qualification of Witness.*

The qualification of a witness as an expert is a question for the trial judge, and his determination will not be reviewed unless a palpable abuse of discretion is disclosed.

*Expert Testimony—Rule in Criminal Cases.*

The rule governing the admission of expert testimony is the same in criminal as in civil cases.

*Handwriting—Basis for Comparison—Testimony Within Reason of Rule.*

The question being as to whether or not the signatures to two instruments were written by the same party, and the instruments being in evidence, and the defendant admitting that the body of both instruments was in his handwriting, and that both of them were signed in his presence, there was an accurate and certain basis for the comparison of said signatures concerning which basis no doubt or collateral issue could arise, and that the opinions of experts based upon such comparison was admissible within the reason of the rule admitting in evidence the opinions of experts, formed from a comparison of signatures.

( Decided February 16, 1899.)

Appeal from the District Court Millard county, Hon. E. V. Higgins, *Judge.*

Defendant was prosecuted for grand larceny and from a verdict and judgment of guilty, appeals to this court. *Affirmed.*

*Messrs. Warner & Houtz,* for appellant.

That it was error to admit the testimony as to the handwriting on certain exhibits having been executed by the same party, and that in this case such evidence was immaterial, see *Durnell* v. *Snowden*, 5 Utah, 216, and cases cited; *Tucker* v. *Kellogg*, 8 Utah, 11, and cases cited; *Rogers* v. *Ritter*, 12 Wall. 320; *Strother* v. *Lucas*, 6 Peters, 767–8; *Moore* v. *U. S.*, 91 U. S. 270.

*A. C. Bishop, Attorney General,* and *William A. Lee, Esq., Deputy Attorney General,* for respondent.

BASKIN, J.

The defendant Webb was convicted, on the charge, by

information, of stealing one brown steer, branded GN on left side and C on left hip, four years old, the property of Richard Nixon, one black cow branded M$^c$ on the right hip, the property of Samuel McIntyre, one red roan cow branded K on left hip, the property of Benjamin Kinney, one black cow branded ◢ on the right ribs, the property of William McIntyre, one red steer, four years old, branded ◄ on the left hip, the property of Anthony Stephenson and J. J. Stephenson of Millard county.

1. When the State rested, the defendant requested the court to instruct the jury to return a verdict of not guilty on the ground that the evidence was insufficient to sustain a verdict of guilty. This the court refused to do, and the action of the court is assigned as error.

The testimony in chief disclosed, substantially, the following facts: The five head of cattle charged to have been stolen by the defendant, belonged, as alleged in the information, respectively to Richard Nixon, Samuel McIntyre, Benjamin Kinney, William McIntyre and Anthony and J. J. Stephenson; that the cattle were running on the range near Leamington, Utah; that each of the cattle was branded with its owner's brand; that without having purchased any of these cattle from their owners, the defendant drove them, with some other cattle, from the range where they were running, to Milford, where he and Joseph B. Dusnup, who was a partner of the defendant in the butchering business, slaughtered them and shipped the hides to A. C. Andrews of Nephi; that afterwards J. F. Holbrook, a deputy sheriff, took possession of the hides; that these hides had upon them the brands of the owners of the five head of cattle which were driven from the range by defendant and slaughtered at Milford; that defendant told his partner that he had bought the cattle driven from the range, of N. C. Neilsen, and showed him

a written bill of sale of about fifteen head of cattle, with the name of the said Neilsen attached thereto as maker, and the name of Walter Webb subscribed thereto as witness. This instrument was dated at the top in this manner:—Six miles below Leamington, August 27, 1897. This bill of sale was, by the consent of the defendant, introduced in evidence, and marked Exhibit " A." It described the cattle therein mentioned by age, color and brands. The description of four of the animals and their brands were the same as the description and brands, set out in the information, of the four animals last mentioned therein; that defendant in the latter part of August, had a conversation with J. C. Hawley, in which he told Hawley he had just returned from Leamington, or had been to Leamington, where he had bought a bunch of cattle from the Neilsen boys, and in coming down with the cattle had lost some of them.

Two witnesses testified that they had resided at or near Leamington for many years, and knew the people residing there; that they did not know of any such person as N. C. Neilsen. One of these witnesses, Christian Ovesson, testified, as follows: "I have lived in Leamington for about fifteen years; am postmaster, and have been for about ten years; am pretty well acquainted with the people there. Know everybody that lives there. There are some Neilsons living there. Never heard of N. C. Neilsen. Leamington is a small place. No man by the name of N. C. Neilsen lives there."

We think that this evidence tended, strongly, to show the guilt of the defendant. Therefore, the refusal of the lower court to instruct the jury to return a verdict of not guilty was not error. This view is in harmony with the decisions of this court in the cases of *State* v. *Halford*, 17 Utah, 475, 54 Pac. Rep. 819, and the *State* v. *Mc-Cune*, 16 Utah, 170, 51 Pac. Rep. 818.

In the case of the *State* v. *Halford*, *supra*, this court, Justice Miner delivering the opinion, said : '' When there is testimony tending to connect the defendant with the commission of a crime, and show his guilt, the weight to be given it is a question for the jury, and the Supreme Court will not substitute its judgment for that of the jury."

2. After the introduction of the defendant's testimony, evidence on behalf of the state was admitted, over the objection of the defendant, the ground of which was that the evidence so admitted was not in rebuttal of the testimony of the defendant.

It is a general rule of practice, that the testimony in reply should be confined to a rebuttal of the evidence in chief; yet the court may, at its discretion, relax the general rule, and when this is done the action of the court, in that regard, is not assignable as error, unless it affirmatively appears from the record that the party complaining was, by the exercise of such discretion, placed in a position of disadvantage in the further progress of the trial. 1 Bish. Crim. Proc. Sec. 966 (N. 2). 8 Enc. Pl. & Pr. (Title, Examination of Witnesses, p. 131 and 132 and cases cited.

The record does not disclose that the defendant was taken by surprise, or otherwise placed in a position of disadvantage; or that he was denied the opportunity of either contradicting or explaining the testimony complained of, or that by reason of the relaxation of the general rule of practice he was unprepared to do so. The only ground of the objection to this testimony was that it was not in rebuttal of the evidence adduced by the defendant.

The record shows that the defendant introduced evidence in surrebuttal. As no abuse of the court's discretion, in the premises, is shown, the objection under consideration is not tenable.

The defendant testified in his own behalf, in substance, that having received a letter signed N. C. Neilsen, dated and postmarked at Leamington, in which it was stated that the writer understood that the defendant was in the butcher business, and that he had some cattle he would like to sell to defendant, after some further correspondence with the said N. C. Neilsen on the subject, the defendant left Milford for Leamington, which is distant from Milford seventy-five miles, and on the morning of the 25th of August, 1897, when about six or eight miles from Leamington he met and was accosted by a man on horseback, who was a stranger to defendant, and who asked the defendant where he was going, to which the defendant replied that he was looking for a bunch of cattle up the road. Whereupon the stranger asked the defendant if his name was Webb, and having received an affirmative answer introduced himself as Neilsen, and said that he was the man who had been corresponding with defendant regarding the sale of cattle; that this strange man and defendant then went to a bunch of about fifty head of cattle which were being held together by a man who was introduced to defendant, by the name of L. C. Johnson; that the said Johnson was also a stranger to the defendant; that the defendant selected nine head of cattle from the bunch so held, paid for the same and asked for a bill of sale, but as there was no writing material there, this was dispensed with on that day; that as defendant was starting away with the nine head he remarked that he would like to buy some ten or fifteen head more like them, and if they had some dry cows he would purchase them; that Neilsen then made the remark that McIntyre of Leamington was very anxious to trade dry cows for steers, and that it was possible that a trade with him might be made, and if the defendant would

come back the next day they would possibly have some more cows; that defendant after driving the nine head home and putting all of them, except four which, on the drive home, in the dark, escaped, in one Kidder's corral, returned the next day, August 26, and bought and paid for nine head more, five of them from Neilsen, and four from Johnson; that having upon his second trip provided himself with pen, ink and paper, upon completing his purchase from these strangers, on the range six miles from Leamington, he wrote two bills of sale, one for the fourteen head bought of Neilsen, and another for the four head obtained from Johnson; that both of these bills were drawn up and signed at the same time.

The first bill of sale was introduced by consent of defendant, by the State in chief, and has been referred to in the first part of this opinion, and has attached to it the signature of N. C. Neilsen as maker and Walter Webb as witness; the other has subscribed to it the signature L. C. Johnson; the first is dated as follows: "Six miles below Leamington, August 27th, 1897," and the other Riverside, August 26th, 1897. In the first bill of sale each head of the cattle mentioned therein is described by their color, age and brands, and in so describing them ten different brands are used, and the respective forms of the brands are traced in the body of said bill. Four of these brands were the brands respectively of the said Samuel McIntyre, Benjamin Kinney, William McIntyre and Anthony and J. J. Stephenson, the parties mentioned in the information as the owners of the cattle described therein, by their respective brands. In the other bill of sale one of the four cattle therein mentioned was described as being branded with William McIntyre's brand, and each of the other three were described by different brands.

The defendant further testified that he knew "the Mc-

Intyre brands, and pretty much all of the others"; that
the difference in the date of the bills of sale was a mistake;
that they were both made on the same day; that Walter
Webb, his brother, and whose name was signed as a wit-
ness to the bill of sale executed by Neilsen, was not
present and did not see it signed; that some time after the
purchase of the cattle, in connection with some business
affairs, defendant was looking over some papers with his
brother, and among the papers found this bill of sale,
threw it to one side and his brother asked what it was;
that defendant replied that it was a bill of sale of cattle
and requested his brother to sign the same as witness;
this he did, but not having any ink signed in pencil.

In answer to the question, what was the purpose in hav-
ing Walter sign it (this bill of sale) defendant said, "Well
I don't know myself, it was just done in a careless way."
Defendant afterwards traced the pencil signature of his
brother in ink.

To the question, "Why did you take the trouble after
he signed it in pencil to trace it in ink? the defendant
answered "because I wanted his name on there; and to
the question, why did you want his name on?" he
answered, "I don't know as I can explain."

Defendant admitted that he might have told J. C.
Hawley and other persons that he purchased the cattle
from the Neilsons of Leamington.

The second bill of sale, having the signature of L. C.
Johnson attached thereto, was put in evidence by defend-
ant.    In rebuttal of this testimony of the defendant the
State placed several witnesses upon the stand, who were
permitted, as experts, to testify, notwithstanding the
objections thereto by defendant, that in their opinion,
formed by a comparison of the signatures to the bills of
sale in evidence, the signature N. C. Neilsen and L. C.

Johnson were written by the same person. · Each of these bills of sale, as stated by defendant's counsel in his brief, covered part and together covered all of the cattle alleged to have been stolen. The grounds of the objection to this testimony, stated in the record are first, that it is incompetent, and second, that no proper foundation was laid for its admission.

Regarding the first objection, in the case of *Tucker* v. *Kellogg*, 8 Utah, 11, the execution of the note sued upon being in issue, plaintiff's council offered to show the witness Dusenberry, who was the cashier of a bank, and competent to testify to handwriting, as an expert, a number of signatures to checks admitted by the parties to have been written by the deceased maker of the note, and asked him to compare them with the one in dispute, and from that comparison to say whether, in his opinion, they were written by the same person." The lower court sustained an objection to the offer and refused to permit the witness to answer the question. This was held to be erroneous. To the same effect see *Dusell* v. *Sowden*, 5 Utah, 216. Both of these cases were civil actions, but the rules governing expert testimony are the same in criminal as in civil cases. 2 Bish. on Crim. Proc. Sec. 432.

The court in *Tucker* v. *Kellogg, supra,* says: "The competency of testimony and the admissibility of evidence is governed by rules supported by reason." Any testimony to which the reason of the rule is applicable, is within the rule and therefore admissible.

It was contended in the argument, by defendant's counsel, that as the comparison was not made with any handwriting proved or acknowledged to be that of the defendant, the evidence was incompetent and irrelevant. The defendant testified that he wrote the body of both of

18 Utah—29.

the bills of sale. Both were in evidence, but the comparison was not made between the writing in the body of these bills, but between the signatures to the same, which furnished an accurate and certain basis for comparison, and regarding which fact no doubt or collateral issue could possibly arise. If these signatures were written by the same person, proof of that fact would certainly discredit the statement of the defendant regarding his purchase of the cattle, and show that the bills of sale were mere devices to cover up the defendant's crime. As tending to show that the signatures to these bills of sale were written by the same person, we are clearly of the opinion that the testimony of the experts was within the reason of the rule permitting such evidence, and that the court did not err in admitting it, unless it erred in its ruling regarding the competency of the two experts J. S. Giles and J. D. Smith. Two other experts were held competent and testified, but in the assignment of errors no reference is made to them. The action of the court in permitting J. S. Giles and J. D. Smith to testify as experts, is the only error alleged in the assignment which relates to the competency of the persons who testified as experts.

From the very nature of the subject no absolute rules can be laid down by which to determine whether a witness is qualified to testify as an expert. Therefore, the question must be left to the discretion of the court whose duty it is to decide. This being so, many courts of the highest authority have held " that the question whether a witness possesses the necessary qualifications of an expert is a question of fact purely within the province and discretion of the trial judge, and that his decision concerning the matter is not subject to revision in the appellate court." Rogers on Expert Testimony, 2d ed. Sec. 22, and cases cited in N. 1.

Many other courts of equally high authority as those above referred to, hold that where there is a palpable abuse of discretion, the ruling of the trial court is subject to review. This is the better rule, and the one best sustained by the authorities.

In the case of *Fort Wayne* v. *Coombs, et al.*, 107 Ind. 84–85, the court says that, "It is for the (trial) court to determine whether the witness is or is not qualified to testify as an expert, and the question is exclusively for the court. Some of the cases go very far upon this point, for some of them hold that the decision of the trial court is conclusive, but we think that the cases, which hold that where there is no evidence at all tending to prove that the witness is qualified to testify as an expert, or where there is a palpable abuse of discretion, the ruling of the trial court is subject to review, are supported by the better reason."

Many cases are cited by the court in support of the doctrine thus laid down.

In the case of Allen's Appeal, 99 Pa. 196–202, the court said: "Upon the question of whether Mrs. Johnston was an expert, it was very much in the sound discretion of the court, and we never reverse such cases unless the discretion has been grossly abused, which it certainly was not in this instance."

The witness J. S. Giles, testified as follows: "I am clerk of this court, and have been county recorder for a number of years in this county. In copying I have seen quite a number of handwritings, and have become familiar with the handwriting of different people in copying documents, records and the like." Upon this showing he was allowed to testify as an expert, over the objection of the defendant.

The witness, J. D. Smith, testified, as follows: "Have

been merchandising nine and a half years; have had occasion to examine signatures and handwriting of various people. The nature of the documents examined were checks and bills of exchange. Have examined signatures on such matters as that." Upon this showing, this witness was allowed, over the objection of the defendant, to testify as an expert.

As there is no exact test by which it can be determined with certainty, how much skill or experience a witness must possess to qualify him to testify as an expert, the peculiar circumstances of each case must from necessity, have much influence upon the trial judge in the exercise of his discretion. Among these circumstances are the bearing of the witness upon the stand, his mental capacity, etc. A personal examination by the trial judge, therefore, gives him a better opportunity to decide, than the appellate court can enjoy. An experience and opportunities which would be sufficient to qualify a sharp, intelligent witness as an expert, might be wholly inadequate to qualify a dull and ignorant one.

In the case of *Delaware & Chesapeake Steam Tow Boat Co.* v. *Starrs*, 69 Pa. St. 36, the court says: "The three first assignments of error related to the admission of opinions of witnesses produced as experts. It is objected that they were not first shown to be such. This is a preliminary question to be determined by the court in the first instance. If the court shall think they are *prima facie* qualified it will be then for the jury to decide whether any, and, if any, what weight, is to be given to their testimony. It is a matter very much in the discretion of the court below, and if it appears that the witnesses offered had any claim to the character of experts, the court will not reverse on the ground that their experience was not sufficiently special."

The evidence of the qualifications of the expert wit-
nesses, in the case at bar, was not as conclusive as it is
desirable the evidence in such matters should be; but the
rule that the decision of such questions by the trial court
will not be reversed unless a palpable or gross abuse of
judicial discretion is shown by the record, is well estab-
lished by the authorities, and as the record in this case
does not show any such abuse, the action of the trial court,
in permitting said witnesses to testify as experts, is conclu-
sive.

This disposes of all the assignments of error discussed
in the brief of the defendant, and in the oral argument by
defendant's counsel, and while there are many other
assignments of error, we do not deem them of sufficient
importance to require special notice or to justify a reversal
of the judgment. It is therefore ordered and adjudged,
that the judgment of the lower court be, and the same is
hereby affirmed.

BARTCH, C. J. and CHERRY, Dist. J., concur.