# STATE v. POTELLO.

## No. 2235. Decided December 13, 1911 (119 Pac. 1023).

1. LARCENY—HORSE THEFT—EVIDENCE—SUFFICIENCY. Evidence *held* insufficient to sustain a conviction of horse theft. (Page 57.)

2. CONSTITUTIONAL LAW—ENCROACHMENT ON JUDICIARY—RULES OF EVIDENCE. Comp. Laws 1907, sec. 4355, providing that possession of property recently stolen when the possessor fails to make satisfactory explanation shall be deemed *prima facie* evidence of his guilt, is not invalid as encroaching upon the judiciary on the theory that mere proof of the larceny and of accused's recent possession requires a conviction.1 (Page 62.)

3. LARCENY—"PRIMA FACIE EVIDENCE." The term *"prima facie"* evidence, within Comp. Laws 1907, sec. 4355, which provides that possession of property recently stolen, when the possessor fails to make satisfactory explanation, shall be deemed *prima facie* evidence of guilt, means "presumptive" evidence, the term not meaning that, unless rebutted by other evidence or discredited by circumstances, the proof becomes conclusive as to guilt. (Page 65.)

4. CONSTITUTIONAL LAW—LEGISLATIVE POWER—ENCROACHMENT ON JUDICIARY—RULES OF EVIDENCE. The legislature can declare that certain facts shall be *prima facie*, presumptive, not conclusive, evidence of another and substantive fact essential to conviction when they have some fair relation to or connection with such other fact. (Page 67.)

5. CRIMINAL LAW—EVIDENCE—PRESUMPTIONS. One presumption or inference cannot rest upon another. (Page 68.)

6. CRIMINAL LAW—EVIDENCE—SUFFICIENCY. Accused cannot complain of insufficiency of the evidence to sustain a conviction, though the state failed to make a case, if he himself proved one for it. (Page 70.)

7. LARCENY—EVIDENCE—SUFFICIENCY. In a larceny trial the state cannot rely upon accused's recent possession of the property as evidence of his guilt, within Comp. Laws 1907, sec. 4355, if the only evidence of the larceny is afforded by the defendant's evidence, and that shows that the larceny was committed by another.2 (Page 70.)

---

1 People v. Swasey, 6 Utah, 93, 21 Pac. 400; People v. Chadwick, 7 Utah, 134, 25 Pac. 737; People v. Hart, 10 Utah, 204, 37 Pac. 330; State v. Webb, 18 Utah, 441, 56 Pac. 159; State v. Overson, 30 Utah, 22, 83 Pac. 557.

2 State v. Converse, 119 Pac. 1030.

APPEAL from District Court, Fifth District; *Hon. Joshua Greenwood,* Judge.

P. Potello was convicted of grand larceny and he appeals,

REVERSED AND REMANDED.

*George B. Greenwood* and *C. C. Parsons* for appellant.

*A. R. Barnes,* Attorney-General, for the State.

STRAUP, J.

The defendant was convicted of stealing a horse, which, under our statute, is grand larceny. He contends that the evidence is insufficient to sustain the conviction.

The evidence on behalf of the state shows that the horse, with other live stock, got out of the corral of the owner at Frisco and strayed away. No particular search or effort was made to find the horse until about four or five months thereafter, when some one informed the owner that the horse was seen about the defendant's ranch at or near Wah Wah Springs fifteen or twenty miles away. The owner, his brother, and Bert James, went to the defendant's place in search of him. The defendant knew them. They greeted each other friendly. After feeding and stabling their horses in the defendant's corral, and pretending that they themselves might desire to use the corral to gather horses from the range, asked permission to look about the defendant's premises. They were readily permitted to do so; the defendant going with them and showing them about. The owner testified that the defendant freely and courteously showed them everything, and made no concealment of anything. They asked him about his corral, which was newly constructed. He told them it was built to corral wild horses down on the range some distance away, and that there were lots of wild horses there not belonging to any one, and that he was going to get some of them. The owner told him he had better not do that. After looking over the defendant's

horses about the premises, one of them asked him where his "broncho" was. He told them he was in the field and pointed to the direction and place where the horse was, about a mile away, and said that he had him hobbled because he was wild. One of them, pretending that he might desire to trade, requested to see the horse. The defendant at first volunteered to go and get him, and then suggested that Bert James, who with the defendant's knowledge, had seen the horse a few days before, should go and get him. He did so. When he returned with the horse, in about fifteen or twenty minutes, the owner, after looking at him, said that the horse belonged to him. Defendant said that he did not and that he belonged to him, the defendant. The owner asked the defendant where he got the horse. He replied, "From the Indians." The owner, "What Indians?" The defendant, "I don't know which Indian." The owner, "There is no Indian around here or from town but what knows" the horse. The defendant: "Well, I don't know which Indian. He may be gone this way or that way to Indian Peak to get pine nuts." The horse had been recently branded with the defendant's brand. The owner called the defendant's attention to an old brand, which, as testified to by the owner, though somewhat indistinct, yet was sufficiently visible to be distinguishable, and said that the old brand was his brand. The defendant replied that the mark shown him was not a brand but a bite. The owner said: "That is not a bite; that is my brand;" and told the defendant that he had better give up the horse. The defendant replied that he would do so if the owner paid him twenty dollars, the amount which the defendant had paid for the horse. This the owner declined, and undertook to lead the horse away; but the defendant forbade him. A wrangle ensued, in which each reasserted his claim of ownership and right of possession to the horse. The owner thereupon said that he would send the sheriff for the horse, and he and his companions departed. He returned to Frisco, and there in a few days obtained a writ of replevin in a civil action and caused a warrant of arrest to issue in a criminal action, in which the defendant

was charged with grand larceny. The sheriff testified that in serving the writs and in bringing the defendant to Frisco he told him that he did not steal the horse, and that he bought him from an Indian and gave twenty dollars for him; and upon further inquiry told the sheriff that he bought him from a man named Walker and a man named Davis, and that Walker was an Indian, or looked like an Indian. The evidence, without dispute, shows that Walker was of very dark complexion, and was a Mexican of the half blood. He further told him that Walker and Davis worked about his place building a corral, and that they had been running horses on the range near by, and that he took the horse in question from them for a board bill amounting to about twenty dollars. When the defendant arrived at Frisco, he and the owner took a drink in a saloon, and in a friendly conversation between them the defendant said: "I know the horse is yours, and that the old brand was your brand; but I thought it was a bite." The owner said: "I know you thought it was a bite, but it was my brand."

What became of the civil suit is not made to appear, nor is it material. The criminal action was either dismissed or abandoned, for subsequently the sheriff filed a complaint before a different magistrate charging the defendant with larceny, upon which complaint the defendant was held to answer. The owner testified that prior to the defendant's arrest he had not sold or otherwise disposed of the horse to any one, and that the defendant's possession was without his authority. It was further made to appear that Walker and Davis had been employed at Frisco. A short time before the defendant obtained possession of the horse, they went to the springs and were there seen about the defendant's premises. A number of range horses belonging to different owners, including the owner of the horse in question, ranged in the vicinity of the defendant's ranch some six or eight miles away. There is no direct evidence on the part of the State that the horse when he left the owner's corral strayed to the range, or that he was thereafter seen on the range. There is direct evidence to show that the horse had been on the

range the previous year. The owner testified that after the horse got out of the corral others told him that they had seen the horse on the range; and that the natural disposition of a horse, under the circumstances, was to stray back to the range. But neither the owner, nor any other witness in behalf of the State, testified that after the horse got out of the corral he was seen, or found on the range, or that some one there took and drove him away. The direct evidence of the state but shows that the horse got out of the corral, strayed away, and was found in the defendant's possession, who claimed he bought him from an Indian, and who refused to give him up. So that upon the evidence of the state the facts that the horse when he left the corral strayed to or was thereafter on the range, or that some one there took and drove him away, rest on mere inferences.

When the owner and his companions were at the defendant's place and demanded possession of the horse, as heretofore stated, Walker and Davis were then about the defendant's place and heard much of the conversation between the defendant and the owner. The owner did not then know that the defendant claimed that he got the horse from them, or that the defendant, by the term "Indian," meant Walker. Another witness for the state, a livery stable keeper, testified that before Walker and Davis went to the springs they were employed by him about his stable at Frisco. There, prior to their leaving, he overheard a part of a conversation between them and the defendant in which the defendant stated that he would make them a better proposition in running wild horses.

The defendant was a witness in his own behalf. He testified that he was a married man and lived with his wife on a ranch at the springs. There he was employed by the South Mountain Mining Company to look after and protect certain water rights belonging to it. He also did work for it at Newhouse, eight miles away, where it was engaged in mining. Walker and Davis came to his place and told him that they had horses on the range, and that they desired to gather them. They asked permission to build a corral on his prem-

ises for such purpose. He consented to that upon the understanding that the corral be left when they got through. They built the corral. The defendant assisted them a short time. They were about the defendant's place several weeks and boarded some of the time with him. They owed him about twenty dollars for board. They brought different horses, as he supposed, and as they told him, from the range, and placed them in the corral. Among them was the horse in question. They tried to sell him to the defendant and offered to sell him to others. They were not able to pay the board bill, and finally tendered the horse in payment of it. The defendant was more or less back and forth from his place to the mine at Newhouse. On one occasion, when the defendant was absent and at the mine, Walker and Davis branded the horse with the defendant's brand. He had no knowledge of it until he returned. They again tendered the horse in payment of the board bill, when he then accepted. In all this the defendant was corroborated by his wife. Other and disinterested witnesses testified that they saw Walker and Davis leading and driving four or five horses at or near the springs, and place them in the defendant's corral, and that among them was a horse answering the description of the one in question. The defendant and another witness testified that the mark on the horse claimed by the owner as his brand was so indistinct as not to be distinguishable, and that it appeared to be the result of a bite or scratch. The defendant also testified that, when the owner and his companions were at his place, Walker and Davis heard the conversations between the owner and the defendant, and that the owner had talked with them. While James was gone after the horse, Walker and Davis went to the defendant's wife and told her that the defendant must tell the owner that he got the horse from the Indians, and that if he did not do so there would be trouble; that they would burn his house. This was communicated to the defendant before James returned. The defendant further testified that Walker and Davis were armed and carried guns most of the time; that he was afraid of them, and for that reason he told the owner

that he got the horse from the Indians, and did not tell him he got the horse from Walker and Davis. The next morning Walker and Davis left, and the defendant has not seen nor heard of them since. It is also made to appear that the defendant, after his arrest, filed a complaint before a magistrate charging Walker and Davis with the theft.

The defendant had been in the employ of the mining company and its predecessor for about four years. One year he lived at Newhouse, and three years at the springs. Prior to that he was a section boss for a railroad company at Los Vegas, Nev. Before that he was in the employ of a smelting company at Bingham. Before coming West he was employed at Columbus, Ohio, and in Boston, where he worked seven years for one company. The superintendent of the mining company and other witnesses testified to the defendant's good character. That testimony was not controverted.

Upon this evidence the defendant was convicted and sentenced to a term of two years in the state prison.

We have a statute (Comp. Laws, 1907, section 4355) which, after defining "larceny," provides that "possession of property recently stolen, when the party in possession fails to make a satisfactory explanation, shall be deemed *prima facie* evidence of guilt." By reason of this statute the state contends that the evidence is sufficient to support the verdict, for it asserts that the evidence shows the commission of a larceny by some one, possession of the property recently stolen in the defendant, and that the question of whether the explanation of his possession was "satisfactory" was one for the jury.

The defendant contends that the statute is invalid because it is an encroachment by the legislature upon the prerogatives of the judiciary. In support of this the defendant urges that from the mere proof of the larceny and possession of the recently stolen property in the accused the statute requires a conviction, unless the accused shall, to the satisfaction of the jury, be able to account for or explain his possession consistent with innocence. In other words, the defendant in

effect contends that should the state merely prove the larceny and recent possession in the defendant and rest, and should the defendant then also rest, the jury, because of the statute, would be required to convict.

The contention involves two things: Firstly, what, in the absence of other evidence, must the state, under the statute, prove to make a *"prima facie"* case? Secondly, what is meant by the term *"prima facie"* as used in the statute? If the construction to be given the statute is such as contended for by the defendant, we think it follows that the statute, for the reason urged, is invalid. That is to say, should the legislature declare that on the mere proof of a larceny and recent possession in the accused, and nothing more, a jury is required or bound to convict, though it may not upon such evidence adduced be convinced beyond a reasonable doubt of the defendant's guilt, such legislation would be an encroachment upon the prerogatives of the judiciary. But we think the statute does not mean that.

Independently of a statute, the authorities are in conflict as to whether mere recent possession of stolen property is even evidence against the accused. In most jurisdictions, and by the great weight of authority, the mere fact of possession of property recently stolen is held to be evidence against the possessor. In others, only his "unexplained possession" is held to be evidence against him. (25 Cyc. 131-134.) Whether such evidence alone is sufficient to sustain a conviction is an entirely different thing. It was held by the Utah Territorial Supreme Court (*People v. Swazey,* 6 Utah, 93, 21 Pac. 400; *People v. Chadwick,* 7 Utah, 134, 25 Pac. 737; and *People v. Hart,* 10 Utah, 204, 37 Pac. 330) that "it seems to be the established doctrine, especially in this western country, that in larceny the recent possession of stolen property is not of itself sufficient to warrant a conviction." Cases are there cited supporting such a holding. Others may be found in 25 Cyc. 134. We do not find any different holding by either the territorial or state Supreme Court, unless it is the case of *State v. Webb,* 18 Utah, 441, 56 Pac. 159. While we think there is some doubt

as to the holding in that case on this point, yet we think from the statement of facts as disclosed by the opinion there was there some direct evidence of the taking. There certainly was a showing in that case on the part of the state of an untruthful explanation with respect to the defendant's possession. In the case of *State v. Overson,* 30 Utah, 22, 83 Pac. 557, the question of sufficiency of the evidence to sustain a verdict was neither presented nor considered. That is expressly stated in both the prevailing and dissenting opinions. That case was ruled on entirely different questions.

From a reading of the statute under consideration it will be seen that the mere proof of the larceny and recent possession in the accused does not make a *prima facie* case of guilt. The statute says that those things, together with the failure "of the party in possession," to make a satisfactory explanation, "shall be deemed *prima facie* evidence of guilt." To say, under the statute, that the state has made a *prima facie* case of guilt by the mere proof of the larceny and recent possession in the accused, is to say something not declared by the statute. If the legislature had intended that, it may be presumed it would have said so in language which readily would convey such a meaning. The language employed does not convey that meaning. It would seem a very strained construction of the statute to say that, when the state had adduced proof tending to show the larceny and recent possession in the accused, it could rest, and then shift or cast the burden on the accused to satisfactorily explain his possession. To say that would mean that the state in the first instance was required to only prove the larceny and recent possession in the defendant, which, under the terms of the statute, is not a *prima facie* case, and then cast the burden on him to explain his possession, which if done by him satisfactorily and consistent with innocence, then the state had not made a *prima facie* case. If, however, he had failed or was unable to make such an explanation to the satisfaction of the jury, then the state had made a *prima facie* case of guilt. That is, the question of whether the state in the first instance and when it rested had made a *prima facie* case

would depend upon the showing made by the defendant with respect to his possession and whether it was accounted for or explained to the satisfaction of the jury. And hence they, and not the court, would determine and be the judges of whether the state had made a *prima facie* case, a doctrine violative of all principles of criminal jurisprudence. We think the statute does not mean that. To so hold is to hold that juries in larceny cases are the judges of both law and fact.

We think a fair meaning of the statute is that, to make a *prima facie* case of guilt, the state, in the absence of other evidence, must show the larceny, recent possession in the accused, and that he failed to make a satisfactory explanation. That is, that he, when asked about his possession, or when called upon to explain it, remained silent, when he ought to have spoken, or gave an untruthful account, or unreasonable, or improbable, explanation, of it; or gave some explanation not consistent with innocence. When, in the absence of other evidence to prove the offense and that the accused committed it, these things are shown by the state, then a *prima facie* case, under the statute, is made. We are not holding that a presumption or an inference may not arise against the accused on the mere proof of the larceny and his possession of the recently stolen property. We are holding that under the express wording of the statute the mere proof of such facts alone is not sufficient to make a *prima facie* case of guilt, and that to make such a case the state, in the absence of other evidence, must also prove that the accused failed to satisfactorily account for or explain his possession. That is what the legislature declared, and we must presume that is what it meant.

Now, what is meant by the term *"prima facie"* as here used in the statute? If the meaning to be given it is that, unless rebutted by other evidence, or discredited by circumstances, it becomes conclusive of the fact of guilt and to operate upon the minds of the jury as decisive of that fact, a meaning sometimes given the term (*Kelly v. Jacksom*, 31 U. S. 622, 8 L. Ed. 523; *State v.*

40 Uah—5

*Burlingame,* 146 Mo. 207, 48 S. W. 72), then again are we of the opinion that the legislature would have encroached upon the judiciary. That is to say, we would be of such opinion, if, upon the proof of the facts which the legislature has declared shall be deemed a *prima facie* case of guilt even though unrebutted and unexplained, the jury would be required to find the accused guilty of the alleged offense, though they should not be convinced of his guilt beyond a reasonable doubt. We, however, are of the opinion that the term *"prima facie"* is not used in the statute in that sense. It frequently is used in statutes similar to the statute here in question in the sense of only presumptive evidence. (*State v. Hardelein,* 169 Mo. 579, 70 S. W. 130; *State v. Intoxicating Liquors,* 80 Me. 57, 12 Atl. 794; *State v. Kline,* 50 Ore. 426, 93 Pac. 237; *Moore v. Hopkins,* 83 Cal. 270, 23 Pac. 318, 17 Am. St. Rep. 248.)

In that sense we think it is used in this statute. That is, it is declared by the statute that from the proven facts of the larceny, recent possession in the defendant, and his failure to satisfactorily explain his possession, an inference or presumption arises, unless rebutted by other evidence or discredited by circumstances, of the further existing fact that it was the defendant who feloniously took the property, the person who committed the proved larceny, and hence a *prima facie* case of guilt is made against him. Not that the jury, on such proven facts, though unrebutted or not discredited by circumstances, are required to convict if upon such proven facts they are not convinced beyond a reasonable doubt of the accused's guilt, but that they, upon such proven facts, if unrebutted or not discredited by circumstances, may presume or infer the further fact of the felonious taking by the accused, and if, upon all the evidence adduced, they are convinced beyond a reasonable doubt of his guilt, may convict. Now, was it within the province of the legislature to declare that from such proven facts the further fact, the felonious taking by the person in possession, may be presumed or inferred, for, as we have shown, that is in effect all that is meant by the phrase *prima facie* evidence of guilt, *prima*

*facie* or presumptive evidence that the person in possession committed the proved larceny.

It undoubtedly is the established rule by the great weight of authority that the legislature has the power to declare that certain facts shall be *prima facie,* presumptive not conclusive, evidence of another and substantive fact **4** essential to conviction when they have some fair relation to or connection with such other fact. (*State v. Beach,* 147 Ind. 74, 43 N. E. 949, 46 N. E. 145, 36 L. R. A. 179; *People v. Cannon,* 139 N. Y. 32, 34 N. E. 759, 36 Am. St. Rep. 668; *Meadowcroft v. People,* 163 Ill. 56, 45 N. E. 991, 35 L. R. A. 176, 54 Am. St. Rep. 447; *Robertson v. People,* 20 Colo. 279, 38 Pac. 326; *Banks v. State,* 124 Ga. 15, 52 S. E. 74, 2 L. R. A. [N. S.] 1007; *State v. Thomas,* 144 Ala. 77, 40 So. 271, 2 L. R. A. [N. S.] 1011, 113 Am St. Rep. 17; *State v. Sheppard,* 64 Kan. 451, 67 Pac. 870; *Parsons v. State,* 61 Neb. 244, 85 N. W. 65.)

Says Mr. Justice Monks, in *State v. Beach, supra*:

"It is clear that the legislature has the power to prescribe rules of evidence and methods of proof. . . . It has repeatedly been held that the legislature has the right to declare what shall be presumptive, or *prima facie*, evidence of any fact. . . . A law which provides that certain facts are conclusive proof of guilt would be unconstitutional, as also would one which makes an act *prima facie* evidence of crime which has no relation to a criminal act, and no tendency whatever to establish the criminal act."

And as correctly stated in Notes to Cases, 2 L. R. A. (N. S.) 1009:

"Most of the statutory rules of evidence that have been upheld are in the form of a declaration that certain facts shall be *prima facie* evidence of another fact, and the distinction generally observed by the courts is that between declaring certain facts conclusive evidence of another fact, and declaring them *prima facie* or presumptive evidence of another fact."

That, we think, was all that was here intended by the legislature, though, perhaps, not as aptly, expressed as it might be.

In the case of *State v. Anderson*, 5 Wash. 350, 31 Pac. 969, the court, in speaking of a statute which provided that a presumption of a criminal intent should follow the proof of an unlawful entry of a building, said:

"It is the constitutional right of the defendant to demand proof of his guilt before he shall be convicted of a crime, but it does not follow from such fact that it is beyond the power of the legislature to provide that a certain presumption may follow from the establishment of a fact from which such a presumption may follow as a reasonable conclusion."

The same result was reached by that court in the case of *State v. Wilson*, 9 Wash. 218, 37 Pac. 424. A statute similar to that in hand was also by that court held constitutional in the case of *State v. Kyle*, 14 Wash. 550, 45 Pac. 147.

So construing the statute, we think it valid.

Now, referring to the facts: Is the evidence sufficient to make out a *prima facie* case? We look first to the evidence on behalf of the state. There being no direct evidence of the taking by the defendant, to indulge the presumption or draw the inference of a felonious taking of the property by him, the state is required to prove the facts of the larceny, recent possession in the defendant, and that he failed to satisfactorily explain his possession. These facts must not themselves be left to mere inferences or presumptions; they must be proved.

It is a familiar rule that one presumption or inference cannot rest upon another mere inference or presumption. It can only rest on proven facts. In accordance with that rule, the inference or presumption referred to in the statute is also based, not on mere inference, but on declared or proven facts. Let it be assumed that the evidence sufficiently shows that the defendant's explanation of his possession was not satisfactory. Do the proved facts on the part of the state also prove the larceny? We think not. No proof and no claim is made that some one took the horse from the owner's corral. That fact is negatived by the state itself, showing that the horse, without a taking by any one, got out of the corral and strayed away—where, the state

did not show. All it showed was that the horse got out, strayed away, and four of five months thereafter was found in the possession of the accused, who said he bought him from an Indian, and who refused to give him up. Of course, the state seeks to draw the inference that the horse strayed to the range some six or eight miles from the defendant's place, and that some one there took and drove him away; and, since the horse was found in the defendant's possession, the further inference is sought that the defendant took and drove, or aided another to take and drive, the horse from the range. But this is merely resting an inference or a presumption upon an inference or a presumption. The only claim made by the state of a taking is a taking from the range. But the state did not show by any one that the horse when he left the corral strayed to the range, or that he subsequently there was seen or found by any one, or that he in fact was on the range, or that some one there, or anywhere else, took and drove him away. It did show that the horse was on the range the previous year, and that the disposition of a horse getting out of the corral, under the circumstances, was to go back to the range. Had the state proved that the horse was in fact on the range—that being the claimed place of the unlawful taking—and by facts or circumstances that some one there took and drove him away, and that shortly thereafter, recently, he was found in the defendant's possession, who failed to satisfactorily explain his possession, then the state, under the statute, would have made a *prima facie* case. But surely no *prima facie* case, under the statute, is made by the mere proof that the horse got out of the corral and strayed away, and four or five months thereafter was found in the possession of another, who refused to give him up, even though he may not have given a truthful or a satisfactory explanation of the manner of obtaining possession. To say that is to say that the failure of the party in possession to satisfactorily explain his possession is *prima facie* evidence of guilt. Guilt of what? A larceny not proved, but which itself rests upon a mere inference or presumption. And, of course, if the state failed to prove the larceny, then it nec-

essarily follows that it also failed to prove that the defendant was in possession "of property recently stolen." The state therefore failed to prove two facts essential to give rise to the presumption that the defendant was the thief.

We now look to the defendant's evidence. Of course, he cannot complain of insufficiency of the evidence to sustain the verdict, though the state failed to make a case, if he himself proved one for it. Does, therefore, the evidence on the part of the state, together with that of the defendant, prove the larceny, and that the defendant committed it? His evidence, not only by his own testimony and that of his wife, but also that of disinterested persons, shows that Walker and Davis were first seen in the possession of the horse leading and driving him at or near the springs and placing him in the defendant's corral. Nothing is made to appear where they got the horse, except the testimony of the defendant and his wife that they stated to them that they got the horse from the range.

But let it be conceded that this evidence, together with that of the state, proves the larceny—the unlawful taking of the horse from the range. But the evidence which shows the larceny, the felonious taking, also shows who committed it—Walker and Davis, not the defendant. Surely, had the state in the first instance proved the larceny, and by direct evidence that another and not the defendant had committed it, the presumption could not be indulged, nor the inference drawn from such proof, that the defendant committed it, though the horse subsequently and recently was found in his possession, and though he may not have given a truthful or a satisfactory explanation of his possession. And the state is in no better position to seek the indulgence of the presumption when, as here, it is obliged to look to the defendant's evidence to support the proof of the larceny, and when that evidence also shows that another and not the defendant committed the larceny. Upon this point further observations are made by us in the case of *State v. Converse,* 40 Utah, 72, 119 Pac. 1030, also just decided,

and where the statute here considered was there also involved.

We are of the opinion that the evidence is not sufficient to support the verdict.

The judgment of the court below is therefore reversed, and the case remanded for a new trial.

FRICK, C. J. (concurring).

I concur with Mr. Justice STRAUP, in his construction of section 4355, that the state must show as a part of its case that the accused failed either to make any explanation relative to his possession of recently stolen property, or that his explanation is unsatisfactory by showing what explanation he in fact made. The question of whether the explanation is satisfactory—that is, whether, under all the facts and circumstances, it is a reasonable or truthful one, or not—is for the jury, when the facts and circumstances are such as would justify reasonable men to arrive at different conclusions with respect thereto. If all reasonable men should arrive at but one conclusion, which is that the explanation is reasonable and truthful, then there can be but one result, which is that it is also satisfactory, and hence the possession cannot be found to be felonious. In this case there is, in my judgment, no substantial evidence upon which a jury could base a finding that defendant's possession of the horse in question was felonious. Such being the state of the evidence, a legal conviction was impossible, and hence a new trial must follow.

McCARTY, J. (concurring).

I concur with my associates in their construction of section 4355, Comp. Laws 1907. I am of the opinion, however, that the evidence in this case is sufficient to support a finding by the jury that the horse, when it came into the possession of the defendant, had been recently stolen; but I am also clearly of the opinion that the evidence, when considered in its entirety, is wholly insufficient to sustain a verdict of guilty.