## STATE v. MERRITT.

No. 4354.    Decided June 9, 1926.    (247 P. 497)

1. CRIMINAL LAW. Jurisdictional question in criminal prosecution is properly raised by motion in arrest of judgment.

2. INDICTMENT AND INFORMATION—DEPUTY DISTRICT ATTORNEY IS AUTHORIZED TO FILE INFORMATION, AND HIS SIGNING AS DISTRICT ATTORNEY IS MERE IRREGULARITY, NOT INVALIDATING INFORMATION (COMP. LAWS 1917, §§ 5761, 5763, 5773, 5774, 8779, 8841, 8878). In view of Comp. Laws 1917, §§ 5773, 5774, 8841, 8878, deputy district attorney is authorized to subscribe and file information, notwithstanding sections 5761, 5763, and 8779, and his signing as district attorney is mere irregularity, which does not invalidate information.[1]

---

[1] *State* v. *Beddo*, 22 Utah, 432, 63 P. 96; *State* v. *Morrey*, 23 Utah, 273, 64 P. 764; *State* v. *Buker*, 23 Utah, 276, 64 P. 1118; *Connors* v. *Pratt*, 38 Utah, 258, 112 P. 399.

3. LARCENY. Evidence of receiving stolen goods knowing them to have been so stolen does not support larceny charge.

4. LARCENY. In prosecution for larceny of automobile, evidence as to whether property had been recently stolen within Comp. Laws 1917, § 8285, *held* for jury.

5. LARCENY. In prosecution for larceny of automobile, evidence *held* not to explain possession of accused under Comp. Laws 1917, § 8285, as matter of law, but question to be for jury.[2]

6. LARCENY. Evidence *held* sufficient to sustain conviction for larceny of automobile.

7. CRIMINAL LAW—INSTRUCTION THAT POSSESSION OF PROPERTY RECENTLY STOLEN IS PRIMA FACIE EVIDENCE OF GUILT, IN ABSENCE OF SATISFACTORY EXPLANATION, HELD NOT ERROR, IN VIEW OF OTHER INSTRUCTIONS (COMP. LAWS 1917, § 8285). Instruction, under Comp. Laws 1917, § 8285, that possession of property recently stolen is deemed prima facie evidence of guilt of larceny, in absence of satisfactory explanation, *held* not erroneous, in view of explanation by court of meaning and effect of statute so as to make clearer to jury that conviction must be on all evidence, and only when convinced of guilt beyond reasonable doubt.[3]

8. CRIMINAL LAW. Refusal of instruction upon force and effect of circumstantial evidence and its proper consideration by jury *held* not error, where court correctly stated law thereon to extent that accused was entitled.

9. CRIMINAL LAW. To warrant conviction, circumstantial evidence must convince jury beyond reasonable doubt that all facts and circumstances are true, and are incompatible with any reasonable hypothesis other than guilt of accused.

10. CRIMINAL LAW. Alleged error in failure to instruct concerning good character of accused under evidence cannot be considered, where no such instruction was requested nor question raised by assignment of error.

11. CRIMINAL LAW—REFUSAL OF NEW TRIAL, SOUGHT UPON AFFIDAVITS RELATING TO NEWLY DISCOVERED EVIDECE OF ALIBI, HELD NOT ABUSE OF DISCRETION, IN VIEW OF COUNTER AFFIDAVITS. Refusal of new trial, sought upon affidavits relating to newly dis-

---

[2] *State* v. *Converse*, 40 Utah, 72, 119 P. 1030; distinguishing *State* v. *Potello*, 40 Utah, 57, 119 P. 1023.

[3] *State* v. *Barretta*, 47 Utah, 479, 155 P. 343.

covered evidence seeking to establish alibi which did not occur to accused until after trial, *held* not abuse of discretion, in view of counter affidavits contradicting alibi theory.

Appeal from District Court, Third District, Salt Lake County; *Wm. M. McCrea,* Judge.

George J. Mirritt was convicted of grand larcency, and he appeals.

AFFIRMED.

*J. R. Haas* and *King & Schulder,* all of Salt Lake City, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *Lawrence A. Miner,* Asst. Atty. Gen., for the State.

THURMAN, J.

Defendant was convicted in the district court of Salt Lake county of the crime of grand larceny, and sentenced to pay a fine of $800, and to an indeterminate term of imprisonment in the state prison. The sentence of imprisonment was suspended for a period of one year during good behavior. The defendant appeals, and assigns numerous errors for a reversal of the judgment.

After conviction, appellant moved in arrest of judgment, and also for a new trial. The motion in arrest of judgment

Corpus Juris-Cyc. References:

[1]   Criminal Law 16 C. J. p. 1253 n. 31.
[2]   Indictments and Informations 31 C. J. p. 643 n. 8, 9, 12; p. 644 n. 18.
[3-5]   Larceny 36 C. J. p. 748 n. 14; p. 920 n. 51; p. 921 n. 58.
[6]   Larceny 36 C. J. p. 899 n. 34.
[7]   Criminal Law 16 C. J. p. 1053 n. 93.
[8, 9]   Criminal Law 16 C. J. p. 763 n. 53; p. 765 n. 60; p. 1063 n. 85.
[10]   Criminal Law 16 C. J. p. 980 n. 83; 17 C. J. p. 180 n. 18.
[11]   Criminal Law 16 C. J. p. 1242 n. 38.

was based upon alleged defects in the information. Omitting title of the court and cause the information reads as follows:

"George J. Merritt, having been heretofore duly committed to this court by Noel S. Pratt, a committing magistrate of said county, to answer to this charge, is accused by E. A. Rogers, district attorney of the Third judicial district of the state of Utah, Salt Lake county, by this information of the crime of grand larceny, committed as follows, to wit:

"That the said George J. Merritt, on the 25th day of July, A. D. 1924, at the county of Salt Lake, State of Utah, did wilfully, unlawfully, and feloniously steal, take, and carry away from the possession of J. W. Ensign, against the will of the said J. W. Ensign, personal property as follows, to wit: One Ford coupe, 1923 model, motor No. 8659145, of the value of $500 lawful money of the United States of America, the said personal property being then and there the property of and in the possession of the said J. W. Ensign, contrary to the provisions of the statute of the state aforesaid, in such cases made and provided, and against the peace and dignity of the state of Utah. Samuel G. Clawson, District Attorney of the Third Judicial District, Salt Lake County, State of Utah."

It is contended that the information was not filed by the district attorney, and that the question raised by the motion is therefore jurisdictional. If this contention       1
be correct, the question was properly raised by motion in arrest of judgment.

The state contends that Samuel G. Clawson was deputy district attorney, and was authorized by law to file informations; that the court took judicial notice       2
thereof; and that the error, if any, was a mere irregularity, and should have been raised on motion to quash.

Several provisions of the statute are referred to by each of the parties in support of their respective contentions. Appellant refers to the following sections of the Comp. Laws of Utah 1917. Section 5761, defining the duties of district attorneys, says:

"He shall draw all indictments and informations for offenses against the laws of this state within his district."

Sections 5763 and 8779 are, generally, to the same effect.

The state relies on section 5773, which authorizes the district attorney in districts having a population of 90,000 or more inhabitants to appoint a deputy, and section 5774, which authorizes said deputy, during the absence or disability of the district attorney, to perform all the duties pertaining to that office. Section 8878 of the same compilation authorizes the setting aside of an information or indictment, "when it is not signed by the district attorney or by the attorney pro tem. for the state."

Section 8841, among other things, provides that an information is sufficient, if it can be understood therefrom "that it was subscribed and presented by a person authorized by law so to do."

The foregoing are the principal sections bearing upon the question under review.

Appellant's counsel refer to the following cases decided by this court: *State* v. *Beddo,* 22 Utah, 432, 63 P. 96; *State* v. *Morrey,* 23 Utah, 273, 64 P. 764; *State* v. *Buker,* 23 Utah, 276, 64 P. 1118; *Connors* v. *Pratt,* 38 Utah, 258, 112 P. 309.

In State v. Beddo, supra, the court held that an information filed by the district attorney was void, because there was no statute authorizing him to perform that duty. An act passed by the Legislature attempting to confer such power was held to be void because it was not enacted as provided in article 6, § 22 of the state Constitution. The other cases above cited were decided upon the authority of the Beddo Case, and in each of them it was held that the question was jurisdictional and could be raised at any time.

In the instant case we have a different question. From the statutes we have referred to it cannot be successfully contended that Samuel G. Clawson was not authorized to subscribe and file the information. It may have been an irregularity to sign his name as district attorney when, technically speaking, he was not district attorney, but that was merely an erroneous designation of his official character, which did not invalidate the information.

The Attorney General makes reference to the following language in 31 C. J. 643, wherein the author says:

"It is generally essential to the validity of an information that it shall be signed by the proper prosecuting attorney after the facts constituting the offense have been alleged therein. * * * Failure to add to the signature the correct designation of the official character of the prosecutor will not invalidate the information."

The cases cited support the text. Many other cases are cited by the Attorney General to the same effect in a greater or less degree. We find none to the contrary.

The defect here complained of was patent on the face of the information. If seasonable objection had been made by motion to quash, or, perhaps, by special demurrer, the information could have been amended without inconvenience either to the state or to the appellant. If the information had been signed E. A. Rogers, District Attorney, by Samuel G. Clawson, Deputy, it would have been more in accordance with orderly procedure, but, in any event, it is manifest that appellant was not prejudiced by the defect complained of.

Before considering the remaining errors relied on which relate to instructions given by the court, refusal to instruct as requested, and insufficiency of the evidence, we will make a brief review of the main features of the evidence upon which appellant was convicted:

On July 25, 1924, and prior thereto, J. W. Ensign, an abstractor of Salt Lake City, whose office is on Exchange place, was the owner of a Ford coupe, which on that date was left for his use in front of his office. When he went to get it in the afternoon, it was gone. He had not loaned or given it away, and it was taken without his knowledge or consent. He notified the police department that his car was stolen. He did not see the car again until November 14, 1924. On that date appellant and a Mr. Carter appeared at Ensign's office to secure a copy of an abstract, and have a note and mortgage drawn covering property in Tooele county. At appellant's request, Ensign went with him to the Carter home to get the papers executed. They rode in the car which

appellant had driven to the office. It was a Ford coupe, and Ensign observed certain marks on the car which were very similar to the marks on his car, which had been stolen. He remarked to appellant that he had owned a car like that, but that it had been stolen during the summer. Appellant made no comment, but commenced to talk on other subjects. When they reached the Carter home, Ensign, in looking around the car, saw other marks on it similar to marks on his stolen car. Having transacted their business at Carter's, they returned to Ensign's office. Appellant told Ensign he would return at 4:30 to get the abstract, and Ensign promised to have it ready. In the meantime Ensign had an officer come to his office. Appellant appeared on time, but in another car. Appellant had informed Ensign that he was going to take the train that afternoon for some point outside the state. That evening Ensign and the officer went to appellant's home in Salt Lake City, but found nobody there. They looked in the garage and saw the car. The number on it was 200007. There being no one to let them examine the car, they went away. Ensign went there several times thereafter, but found nobody at home. On November 20, 1924, he saw the car standing on Postoffice place, and tried to get into it, but it was locked, and his key which belonged to the car would not unlock it. He again examined the car, and became more convinced it was his. The officers were called, and, as the car was being operated under a Franklin sedan license, appellant was arrested for using a fictitious license. Appellant explained that he had a Franklin sedan in the paint shop being painted, and that he had taken the plate off the Franklin and was using it on the Ford while the other car was being painted. At the county jail he was asked how he came to have possession of the car, and his statement was that he had loaned a young fellow, Le Roy Harrison, some money, and had taken the car as security. The officer testified that appellant first gave the date as January, 1924, and afterwards as April of the same year. Appellant afterwards admitted that he forged a promissory note of date January

29, 1924, and a bill of sale for the car of April 2d of the same year, both of which documents purported to be signed by Le Roy Harrison. The note was for $300. Appellant stated that Harrison failed to pay the note, which was due April 2, 1924, and that at Harrison's request appellant loaned him $85 more and took a bill of sale of the car. Several adjustments, changes, and alterations had been made in the car after it was stolen. An F. & F. oiler had been removed. The floor board had been changed. A water pump had been installed so as to cover the number of the motor, with the exception of the last digit. That digit, however, was not the last digit on the number originally on Ensign's car. On November 20, 1924, after appellant was taken to jail, he was permitted to go home on account of the illness of his wife. The next evening the officers went to appellant's home, at which time he repeated the story of lending money to Harrison and taking his car for the debt. The officers informed him, if that was his explanation, they would have to arrest him for grand larceny, for which they had a warrant. The officers had previously been shown the fictitious note and bill of sale. On the way to the jail appellant complained of the way Ensign had treated him. The officers then informed him they had brought out the original number of the car by a secret process which showed the car to be Ensign's. After that appellant refused to talk.

Appellant's explanation as to why he forged the note and bill of sale was that he "got rattled." He also stated he did it because he was angry at the way Ensign treated him, and did it to protect his own interests. Appellant also said he had another bill of sale in possession of his attorney. His attorney, being present, produced the bill of sale, which was dated August 14, 1924. Appellant then requested the officers to drop the case, which they refused to do. There was also evidence to the effect that appellant had requested some of the mechanics who had done work on the car to change their records so as to show that the work was done in May, 1924. The evidence also tends to show that these matters, together

with the forgery of the note and bill of sale in Le Roy Harrison's name, were all done prior to appellant's learning that the original number of the car had been discovered by the secret process to which we have referred.

Appellant proved by witnesses of good standing that his reputation in Salt Lake City, where he resides, for truth and veracity was good. The evidence also showed that he had lived in Salt Lake City many years; that was a married man, a man of affairs. Expert witnesses also gave it as their opinion that, while the body of the note and bill of sale executed in August, 1924, was in the handwriting of appellant, the signature thereto was not his.

Such are the main features of the evidence upon which appellant was convicted. Affidavits in support of an alibi were filed on motion for a new trial, and counter affidavits were filed on the part of the state.

The first contention of appellant is that the evidence was insufficient to sustain the verdict, and that the verdict was against law. This contention is made in view of the nature of the offense.

Comp. Laws Utah 1917, § 8285, defining larceny, reads:

"Larceny is the felonious stealing, taking, carrying, leading, or driving away the personal property of another. Possession of property recently stolen, when the party in possession fails to make a satisfactory explanation, shall be deemed prima facie evidence of guilt."

The evidence is conclusive that the car was Ensign's, and that it was feloniously stolen by some person July 25, 1924, as alleged in the information. The question is, Was it stolen by the appellant? If it was in fact stolen by some one else from whom appellant received it, he would not be guilty of the offense charged, even though he knew it had been stolen.

· Receiving stolen goods, knowing them to have been stolen, is a different offense from the one charged in the information. Such is the law, and the court so instructed the jury. Appellant contends that, even though the property may have been stolen, it could not be said to have been recently stolen,

and that, in any event, appellant made a satisfactory explanation of his possession within the purview of the statute above quoted. The principal case relied on by appellant is *State* v. *Potello*, 40 Utah, 56, 119 P. 1023. In that case the defendant was convicted of stealing a horse. Defendant on appeal contended that the evidence was insufficient to sustain the conviction. The evidence showed that the horse, with other live stock, got out of the owner's corral, and strayed away. Some four or five months later the horse was found in possession of the defendant, who said he purchased it from the Indians. He was asked, "What Indians?" and answered he "didn't know." He afterwards told the sheriff he bought the horse from a man named Walker and a man named Davis; that Walker was an Indian, or looked like one. The question turned upon the meaning and effect of the last sentence of the above statute. The opinion of the court is exhaustive and illuminating. Appellant in the instant case quotes from the opinion at page 65 (119 P. 1027) the following paragraph:

"We think a fair meaning of the statute is that, to make a prima facie case of guilt, the state, in the absence of other evidence, must show the larceny, recent possession in the accused, and that he failed to make a satisfactory explanation. That is, that he, when asked about his possession, or when called upon to explain it, remained silent, when he ought to have spoken, or gave an untruthful account, or unreasonable, or improbable, explanation, of it, or gave some explanation not consistent with innocence. When, in the absence of other evidence to prove the offense and that the accused committed it, these things are shown by the state, then a prima facie case, under the statute, is made. We are not holding that a presumption or an inference may not arise against the accused on the mere proof of the larceny and his possession of the recently stolen property. We are holding that under the express wording of the statute the mere proof of such facts alone is not sufficient to make a prima facie case of guilt, and that to make such a case the state, in the absence of other evidence, must also prove that the accused failed to satisfactorily account for or explain his possession. That is what the Legislature declared, and we must presume that is what it meant."

The excerpt quoted is undoubtedly sound law. It applies to the facts in the Potello Case and also to the facts in the case

at bar. This court reversed the judgment in the Potello Case, holding that the evidence was insufficient as matter of law to sustain a conviction. The reason, however, for such holding is clearly stated in the opinion at page 70 (119 P. 1029) wherein the court says:

"We now look to the defendant's evidence. Of course, he cannot complain of insufficiency of the evidence to sustain the verdict, though the state failed to make a case, if he himself proved one for it. Does, therefore, the evidence on the part of the state, together with that of the defendant, prove the larceny, and that the defendant committed it? His evidence, not only by his own testimony and that of his wife, but also that of disinterested persons, shows that Walker and Davis were first seen in the possession of the horse leading and driving him at or near the springs, and placing him in the defendant's corral. Nothing is made to appear where they got the horse, except the testimony of the defendant and his wife that they stated to them that they got the horse from the range. But let it be conceded that this evidence, together with that of the state, proves the larceny—the unlawful taking of the horse from the range. But the evidence which shows the larceny, the felonious taking, also shows who committed it—Walker and Davis, not the defendant. Surely, had the state in the first instance proved the larceny, and by direct evidence that another and not the defendant had committed it, the presumption could not be indulged, nor the inference drawn from such proof, that the defendant committed it, though the horse subsequently and recently was found in his possession, and though he may not have given a truthful or a satisfactory explanation of his possession."

It thus appears that in the Potello Case the horse was first found in the possession of Walker and Davis from whom Potello purchased it, and, even though his explanation of his possession may not have been satisfactory, it conclusively appeared that he did not steal the horse. In the instant case, after the car was stolen July 25, 1924, it was never seen by any one connected with the case, except the defendant, until it was found in his possession November 14, of the same year. The cases therefore are clearly distinguishable, and that, too, upon the most vital question involved in the case. See, also, in this connection *State* v. *Converse*, 40 Utah, 72, 119 P. 1030, in which a similar question was involved. The court affirmed the judgment of conviction in that case be-

cause the defendant failed to satisfactorily explain his possession of the property.

In the instant case, in somewhat tedious detail, we have set out the substance of the main features of the evidence. It is not necessary to comment upon it at length. It speaks for itself. In the circumstances of this case we cannot say, as matter of law, that the time which elapsed between the larceny of the property and finding it in appellant's possession was of such length as to take the case out of the category of "property recently stolen." We are of opinion that the finding of the jury upon that question, in view of the particular facts of the case, is conclusive. So, also, are we of the same opinion respecting the question as to whether appellant's explanation of his possession of the car was satisfactory. For aught we know, appellant may be entirely innocent of the crime charged against him, but it is going a long way to contend, as do his counsel in their brief, that his explanation of his possession of the car was satisfactory and fully answered the demands of the statute. Appellant certainly wove a tangled web when he forged the promissory note of date January 29, 1924, and the bill of sale of April 2d, of the same year, and offered them in explanation of his possession. The note was dated six months, and the bill of sale nearly four months, before the car was stolen. His request made to the mechanics who worked on the car to change their records so as to show the work was done in May, two months before the car was stolen, is a piece of the same cloth and the same type of deception. There is much plausibility in the contention of the state that the promissory note and the bill of sale of August 14, 1924, were not drawn until after appellant had knowledge that the original number of the car had been exposed, showing conclusively that Ensign was the owner of the car. Appellant's failure to give a reasonable explanation as to why he forged the promissory note and bill of sale of January and April, 1924, if the note and bill of sale of August 14, 1924, were genuine, independent of other in-

criminating circumstances, made it difficult for a conscientious jury to accept his explanation as satisfactory.

It is unnecessary to prolong the discussion as to this assignment. The evidence was sufficient to sustain the conviction.

Appellant assigns as error instruction No. 6, which reads as follows:

"You are instructed that the law provides that possession of property recently stolen, when the party in possession fails to make a satisfactory explanation, shall be deemed prima facie evidence of guilt. That is, it is declared by statute that from the proven facts of the larceny, recent possession in the defendant, and his failure to satisfactorily explain his possession, an inference of presumption arises, unless rebutted by other evidence or discredited by the circumstances, sufficient to make a prima facie case against the defendant. It does not mean that the jury on such proven facts, though unrebutted or not discredited by circumstances, are required to convict unless upon such proven facts the jury is further convinced beyond a reasonable doubt of the accused guilt, but means that the jury, upon such proven facts, if unrebutted and not discredited by the circumstances may presume or infer the further fact of the felonious conduct of the accused, and if, upon a consideration of all of the evidence the jury are convinced beyond a reasonable doubt of the defendant's guilt, then you may convict him."

Appellant contends that the court in effect instructed the jury "that the possession of property recently stolen, when the party in possession fails to make a satisfactory explanation, shall be deemed prima facie evidence of guilt."

If the court had so instructed the jury without explaining its meaning, there would have been much force in appellant's contention. State v. Barretta, 47 Utah, 479, 155 P. 343, cited by appellant. But in the instant case the court explained the meaning and effect of the statute in such manner as to make it clear to the understanding of the jury that they were not required to convict the defendant unless upon all of the evidence they were convinced of his guilt beyond a reasonable doubt. Counsel for appellant have discussed this assignment from many angles and many points of view, and have cited numerous cases which evi-

dently, in their opinion, have some bearing upon the question under review. The court, however, is clearly of the opinion that the instruction given by the court, in view of all the circumstances of the case, was not error, and that the assignment should not prevail.

Appellant also assigns as error the refusal of the court to instruct the jury as requested in defendant's request No. 10, which reads:

"To warrant a conviction on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proven by competent evidence beyond a reasonable doubt, and all the facts necessary to such conclusion must be consistent with each other and with the main facts sought to be proved; and the circumstances taken together must be of a conclusive nature, leading on the whole to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no other person committed the offense charged. The mere union of a limited number of independent circumstances, each of an imperfect and inconclusive character, will not justify a conviction; they must be such as to generate and to justify full belief according to the standard rule of certainty. It is not sufficient that they coincide with and render probable the guilt of the accused, but they must exclude every other reasonable hypothesis. The facts must be absolutely incompatible with innocence and incapable of explanation on any other reasonable hypothesis than that of guilt; no other conclusion but that of guilt of the accused must fairly and reasonably grow out of the evidence."

The instruction requested relates to the force and effect of circumstantial evidence and how it should be treated and considered by the jury. Upon that subject the court in its instruction No. 7 instructed the jury as follows:

"When circumstantial evidence is relied upon to obtain a conviction of a person charged with crime, it is not only necessary that the circumstances all concur showing that the defendant committed the crime, but that all such circumstances are inconsistent with any other rational conclusion. The state must not only convince you beyond a reasonable doubt that the alleged facts and circumstances are true, but they must be such facts and circumstances as are incompatible, upon any reasonable hypothesis, with the innocence of the accused and incapable of explanation upon any reasonable hypothesis other than that of the guilt of the accused."

The instruction given by the court correctly stated the law, and, in our opinion, covered all that appellant was entitled to under his request.

Appellant's request No. 10, which also relates to circumstantial evidence, was likewise refused by the court, and the refusal assigned as error.

What we have already said respecting request No. 7 fully answers counsel's contention as to request No. 10. The question, therefore, will not be further considered.

In closing their discussion of the last assignment, counsel for appellant complain that the court did not instruct the jury concerning the good character of the defendant, as disclosed by the evidence. It is true that no instruction was given upon that subject. It is likewise true that no such instruction was requested, nor is the question raised by the assignment of errors. It therefore cannot be considered.

Finally, appellant insists that the court erred in denying his motion for a new trial. In addition to the errors of law assigned which we have determined adversely to appellant's contention, appellant in the court below offered in support of his motion for a new trial certain affidavits relating to newly discovered evidence. As a basis for this offer, he made his own affidavit to the effect that at and before the trial of the case he was unable to remember where he was on the 25th day of July, 1924, although he used every means at his command to refresh his memory, until shortly after the trial when he was in Granger, Wyo., and some reference was made to a celebration and dance at Lyman, Wyo., on July 24, 1924. He then remembered having attended that dance and having left there long after midnight in company with one James Stimson, with whom he drove to Granger, arriving there about 4 o'clock a. m. of the next day. He then went to bed in a room assigned to him by Stimson, who was operating the hotel, and slept until noon the next day. This was corroborated by the affidavit of Stimson, who further deposed that on the 24th day of

July at Lyman he requested the defendant to eat with him and attend the dance that night; that they attended the dance, and stayed there until 2 or 2:30 o'clock a. m. of July 25th. L. D. Hill also made affidavit that he knew appellant and saw him in Granger on July 25th, 1924. Counter affidavits on the part of the state were made by Caroline C. Johnson, who stated she operated the hotel at Lyman, and that Stimson and appellant were not in her hotel on July 24, 1924, and did not eat there on that date. C. R. Pearce, on behalf of the state, made affidavit to the effect that he was a resident of Lyman, Wyo.; that on July 24, 1924, he was active on the entertainment committee which held a celebration and gave a dance that night; that he was there, and saw all the persons who were present at the dance; that he did not see James Stimson, whom he had known for some years. He also stated that the dance did not continue after 1 or 1:30 a. m. that night. Edward Stead-miller, Jr., resident of Lyman, and also a member of the entertainment committee of July 24, 1924, and present at the dance, made affidavit to the same effect. The trial court overruled the motion for a new trial, and we are unable to say that the court abused its discretion in denying the motion.

We have considered all the matters complained of by appellant, and find no error in the record.

Judgment affirmed.

GIDEON, C. J., and FRICK, and CHERRY, JJ., concur.

STRAUP, J. I concur in the result, but withhold my opinion as to the competency of the counter affidavits contradicting the averred facts in the affidavits of the movant. While it is not stated in the opinion that the counter affidavits were competent for such purpose, still the one in the opinion, being offset against the other, might lead to the conclusion that they were regarded competent and proper for such purpose and to establish a claimed precedent. I

recognize that counter affidavits may be used on the question of diligence and the like, and even for the purpose of attacking the credibility of the new witnesses, but I am not prepared to say that they may be also used to controvert the truth of the alleged new matter itself, for, as some authorities say, if the movant has brought himself within the rule of newly discovered evidence material to, and admissible on, the issue, and not merely cumulative or impeaching, it is within the province of the jury and not the court passing on the motion to determine the truth of the facts sought to be established. 1 Spelling, New Trial, § 407. While I recognize authority to the contrary (Hayne, New Trial, [Revised Edition] § 93a), still, as the point seemingly here was not pressed, I think we ought not tacitly so to display the matter as to indicate a decision on it, but should hold the question open for future consideration, and when properly assigned and presented.

I think the trial court was justified in overruling the motion regardless of the counter affidavits.